591 F.2d 579
 18 Fair Empl.Prac.Cas. 1547, 18 Empl. Prac.
Dec. P 8914
LaPriel B. JAMES, Plaintiff-Appellant,
v.
NEWSPAPER AGENCY CORPORATION, a Utah Corporation, Defendant-Appellee,
Equal Employment Opportunity Commission, Amicus Curiae.
 No. 77-1981.
 United States Court of Appeals,
Tenth Circuit.
 Argued Sept. 29, 1978.
Decided Jan. 22, 1979.
Rehearing Denied March 2, 1979.
 
 David E. Lata, Salt Lake City, Utah (Bryce E. Roe, Roe & Fowler, Salt Lake City, Utah, on brief), for plaintiff-appellant.
 Rex J. Hanson, Salt Lake City, Utah (John M. Chipman of Hanson, Russon, Hanson & Dunn, Salt Lake City, Utah, of counsel, James S. Lowrie of Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, on the brief), for defendant-appellee.
 Leopoldo Fraga, Jr., Atty., Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Jr., Associate Gen. Counsel, Beatrice Rosenberg, Asst. Gen. Counsel, Washington, D. C., on brief, for E.E.O.C., amicus curiae.
 Before McWILLIAMS, McKay and LOGAN, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 This is essentially a case of alleged discrimination in conditions of employment because of sex. LaPriel B. James, a female, was employed from 1952 until 1973 by Newspaper Agency Corporation, which performs the production, distribution, and business functions for two Salt Lake City newspapers, the Salt Lake Tribune and the Deseret News. For virtually the entire period of her employment, James worked in the accounting/credit department as a collector of so-called transient advertising accounts. In July, 1973, James resigned because of bad health and her general dissatisfaction with her job.
 
 
 2
 In 1975 James brought suit against her former employer, Newspaper Agency Corporation, alleging as a first claim for relief violations of the Civil Rights Act of 1964. 42 U.S.C. § 2000e, Et seq. As a second claim for relief James alleged that her erstwhile employer had been guilty of willful and unlawful interception of wire and oral communications in violation of 18 U.S.C. § 2510, Et seq. As concerns this latter claim, the trial court granted summary judgment in favor of the defendant agency. Trial of the first claim was to the court, sitting without a jury, and the trial judge found in favor of the defendant. James now appeals. Our study of the case leads us to conclude that none of the matter urged on appeal warrants a reversal, particularly when such matter is viewed in its trial context.
 
 
 3
 The second claim for relief was based on alleged interception of wire or oral communications by the defendant in violation of 18 U.S.C. § 2511. As indicated, the trial judge granted summary judgment for the defendant on this claim. From the evidentiary material before the court in connection with the motion for summary judgment we learn that on January 5, 1972, the defendant decided to install a telephone monitoring device on the telephones in certain of its departments, particularly those departments dealing with the general public. All affected personnel were notified, in writing, of this decision. James' telephone was one of several telephones that was thus monitored. The monitoring system was installed by the Bell system. The purpose was to allow supervisory personnel to monitor business calls to the end that employees could be given training and instruction as to how to better deal with the general public, and also to serve as some protection for employees from abusive calls. One of James' main assignments was to collect unpaid bills from transient advertisers by use of the telephone.
 
 
 4
 18 U.S.C. § 2511 provides, Inter alia, that it is unlawful for any person to use "any electronic, mechanical, or other device to intercept any oral communication . . . ." 18 U.S.C. § 2510(5)(a) defines "electronic, mechanical, or other device" as follows:
 
 
 5
 (5) "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire or oral communication Other than
 
 
 6
 (a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a communications common carrier in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business; or (ii) being used by a communications common carrier in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties: . . . (Emphasis added.)
 
 
 7
 As above mentioned, the evidentiary matter before the trial court when it granted summary judgment in favor of the defendant on the wire interception claim showed that the defendant had requested the telephone company to install a monitoring device which would permit the defendant to listen in on telephone conversations between its employees and its advertisers, and others. This was a part of the service rendered by the phone company on request. As indicated, the reason for the installation was the concern by management over abusive language used by irate customers when called upon to pay their bills, coupled with the possible need to give further training and supervision to employees dealing with the public. The installation was not done surreptitiously. Rather, all employees were advised in advance, in writing, of the proposed installation, and there was no protest. In our view, the present case comes squarely within the exception provided in 18 U.S.C. § 2510(5)(a), and it is on this basis that we affirm the summary judgment granted the defendant on the second claim.
 
 
 8
 We do not regard our holding in the instant case to be at odds with United States v. Harpel, 493 F.2d 346 (10th Cir. 1974). In Harpel we held that the surreptitious use of a telephone extension to record a private telephone conversation did not qualify as an exception under 18 U.S.C. § 2510(5)(a), since such was not in the "ordinary course of business." Here the installation was not surreptitious, but with advance knowledge on the part of both management and its employees, and was for a legitimate business purpose.
 
 
 9
 The remaining matters urged as ground for reversal relate to the first claim only. James argues that as concerns her sex discrimination claim the trial court erred in four particulars: (1) the judge abused his discretion in refusing to allow her to amend the pre-trial order so as to include the names of four additional witnesses; (2) unreasonable limitation on discovery; (3) erroneous rejection of evidence which would show a practice and pattern of sex discrimination within the company; and (4) the trial court's finding and conclusion of no sex discrimination is clearly erroneous.
 
 
 10
 A detailed pre-trial order was prepared by counsel and signed by the trial judge. James listed her "will call" witnesses, and her "may call" witnesses, as did the defendant. The latter listed as two of its "will call" witnesses Joseph Clary Crooks and Jay Carlson, and as two of its "may call" witnesses Grant Thompson and Louise Gasparac. All four were employees of the defendant, and none was listed by James as either "will call" or "may call" witnesses. Immediately prior to trial James sought to amend the pre-trial order and include Crooks, Carlson, Thompson and Gasparac as plaintiff's "will call" witnesses. The trial court denied that request, and such is now assigned as reversible error. It is agreed that this is a matter resting in the sound discretion of the trial judge, and under the circumstances we find no abuse of that discretion. Grain Dealers Mut. Ins. Co. v. Farmers Union Coop. Elev. & Ship. Ass'n, 377 F.2d 672, 680 (10th Cir. 1967); Case v. Abrams, 352 F.2d 193 (10th Cir. 1965); and Globe Cereal Mills v. Scrivener, 240 F.2d 330 (10th Cir. 1956).
 
 
 11
 Events occurring during the actual trial of the case demonstrate to our satisfaction that the denial by the trial court of James' request to amend the pre-trial order played no significant role. At the conclusion of James' presentation of evidence, the defendant moved to dismiss on the ground that James had failed to establish a Prima facie case. This motion was denied, and the defendant then put on its case. In the presentation of its case the defendant called three of the four persons James sought to add to its list of witnesses, namely Crooks, Carlson, and Gasparac, and each was subject to cross-examination. The fourth person, Thompson, was available and James elected not to call him as a rebuttal witness. Viewed in this light, any conceivable error by the trial court in denying James' belated request to add four persons to her list of witnesses could not have affected the outcome of the trial and would be only harmless error.
 
 
 12
 We do not find that James was unreasonably restricted in her pre-trial discovery. She filed a motion to compel answers to interrogatories and the production of certain company documents. The trial court granted this motion, although it did limit the discovery to the accounting/credit department and confined it to the four-year period of time from 1969 to 1973. James apparently sought records for an eight-year period, and from the advertising department as well as the accounting/credit department. The trial court held a hearing and by its ruling attempted to grant James her discovery rights and at the same time not cause the defendant to expend an inordinate amount of time producing material that was not really relevant to the issues in the case. James was a long-time employee in the accounting/credit department and the gravamen of her complaint was that when the assistant credit manager retired she failed to be promoted to his position. Viewed in context, the trial court's ruling regarding discovery played an insignificant role in this entire proceeding.
 
 
 13
 Similarly, the trial court's exclusion of certain evidence offered by James at trial did not affect the outcome. Testimony concerning the defendant's employment practices from 1946 to 1960 had doubtful relevancy to James' claim that in 1971 she was discriminated against because of her sex when she was not promoted to the position of assistant credit manager. This was a trial to the court, and the erroneous exclusion of evidence does not give rise to reversible error unless it can reasonably be said that not only was the excluded evidence in fact competent, but also that such exclusion precluded a fair trial. Sims Consolidated, Ltd. v. Irrigation and Power Equip. Co., 518 F.2d 413 (10th Cir.), Cert. denied, 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 141 (1975).
 
 
 14
 James' final argument is that the trial court's finding and conclusion that there was no discrimination based on sex is clearly erroneous. We do not agree. The evidence was conflicting, and the trial court simply chose to give greater credence to the defendant's evidence. This was the prerogative of the trial judge, who of course is the trier of the facts. James no doubt made out a Prima facie case of sex discrimination when she was not allowed to fill the vacancy created in the accounting/credit department when Roland Aveson retired in 1969, and, according to James, one Grant Thompson was brought in from the outside to fill the position. However, the defendant's evidence was quite different. It showed that there never was a position of assistant credit manager and that when Aveson retired there was no intent to replace him. Also, according to the defendant's witnesses, Grant Thompson was hired to head up its newsprint inventory control, for which he had particular qualifications. Without going into greater detail, the record supports the trial court's disposition of the matter, though there was admittedly evidence to the contrary.
 
 
 15
 In our view the trial judge, in his conduct of the trial, substantially followed the guidelines of McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and the more recent case of Furnco Construction Corp. v. Waters, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), as well as our own case of Rich v. Martin Marietta Corp., 522 F.2d 333, 347 (10th Cir. 1975). The trial judge denied the defendant's motion to dismiss made at the conclusion of James' presentation of evidence, thereby indicating that James had established a Prima facie case. Thereafter the defendant presented its evidence tending to show legitimate nondiscriminatory reasons for its actions. And James' rebuttal testimony was only minimal. Such being the case, the fact that the trial judge's findings and conclusions are not couched in the precise language of McDonnell Douglas, Furnco, and Rich does not necessitate a reversal. It is obvious to us that in the instant case the trial judge by his findings held that James had failed to carry her overall burden of proof. See Kentroti v. Frontier Airlines, Inc., 585 F.2d 967 (10th Cir. 1978). To reverse and remand with direction that the trial judge reword his findings in the precise verbiage from those cases would be a useless gesture.
 
 
 16
 Judgment affirmed.
 
 
 17
 McKAY, Circuit Judge, dissenting in part and concurring in part:
 
 
 18
 I dissent because I am convinced the trial court failed to evaluate the evidence as required by the Supreme Court's decision in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Furnco Construction Corp. v. Waters, 438 U.S. 567, 573, 98 S.Ct. 2943, 2948, 57 L.Ed.2d 957 (1978). Writing for a unanimous court in McDonnell Douglas, Mr. Justice Powell detailed the approach that should be followed in Title VII employment discrimination actions. Under that approach, the plaintiff carries the initial burden of establishing a prima facie case of prohibited employment discrimination. 411 U.S. at 802, 93 S.Ct. 1817. The burden then shifts to the employer to show that the decision adverse to the plaintiff was based on legitimate considerations rather than prohibited ones. Id.; Furnco Construction Corp. v. Waters, 98 S.Ct. at 2950. Finally, if the prima facie case is met, plaintiff is entitled to "a fair opportunity to show that (defendant's) stated reason for (plaintiff's) rejection was in fact pretext." 411 U.S. at 804, 93 S.Ct. at 1825. If the plaintiff introduces such evidence of pretext, the trial court must confront it. Corley v. Jackson Police Department, 566 F.2d 994, 1001 (5th Cir. 1978).
 
 
 19
 The trial court did not cite the McDonnell Douglas case in its Memorandum Opinion, nor does the opinion's analysis reflect that the test required by that case was utilized. The trial court simply stated that plaintiff failed to prove by a preponderance of the evidence that defendant's refusal to give her the position was impermissibly discriminatory.[1]
 
 
 20
 In similar situations other circuits have remanded cases for consideration of the evidence in accordance with the McDonnell Douglas test. E. g., Blizard v. Fielding, 572 F.2d 13, 14-15 (1st Cir. 1978); Corley v. Jackson Police Department, 566 F.2d 994, 999-1001 (5th Cir. 1978); Pond v. Braniff Airways, Inc., 500 F.2d 161, 162, 165-67 (5th Cir. 1974). I would follow this procedure here. "It may be that the district court will find, after three steps, what it found after one step that the decision not to hire plaintiff (for the position in question) was not influenced by her sex." Blizard v. Fielding, 572 F.2d at 15. Nonetheless, I, like the majority in Blizard, "do not feel free . . . to say that the McDonnell Douglas approach can be dispensed with."[2] Id.
 
 
 21
 However, more is required here than mere reconsideration of the evidence using the proper framework. McDonnell Douglas requires that plaintiffs be given a fair opportunity to demonstrate that reasons advanced by the employer for the action taken are in fact pretextual. The Court specifically noted in McDonnell Douglas that evidence demonstrating an employer's practice with regard to minority employment would be relevant in establishing pretext. 411 U.S. at 804-05, 93 S.Ct. 1817. Furthermore, it observed that statistics concerning the employer's employment practice and policy might be helpful in illuminating that practice. 411 U.S. at 805, 93 S.Ct. 1817 (citing the decision of this court in Jones v. Lee Way Motor Freight, Inc., 431 F.2d 245 (10th Cir. 1970), Cert. denied, 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237 (1971)). Pretext can be shown by demonstrating that an employment decision "conformed to a general pattern of discrimination" against women. 411 U.S. at 805, 93 S.Ct. at 1825. In light of this authority, limiting plaintiff's discovery to statistical data of a single department was error. She had a right to discover the company-wide employment practices of the defendant in an effort to show that the reasons advanced by defendant for her not receiving the job were pretextual.[3]
 
 
 22
 Similarly, the testimony of witnesses Hilton and Davie and the proffered EEOC forms were intended to demonstrate the discriminatory practices and policies of defendant. This evidence also bore on the issue of whether defendant's articulated reasons for dismissing plaintiff were pretextual. It therefore should have been admitted.
 
 
 23
 Given the trial court's failure to utilize the proper standard of evidentiary evaluation, plaintiff's inability to discover information of crucial significance to her case, and the exclusion at trial of evidence similarly important, I would remand for a new trial on the discrimination claim.
 
 
 24
 Given my view of the appropriate disposition of this case, I consider the pretrial order issue to be moot. I concur in the majority's decision regarding the wiretap claim.
 
 
 
 [1]
 While I agree with the majority that plaintiff clearly established a prima facie case, the Memorandum Opinion does not particularize if or how defendant rebutted that showing, nor is reference made to evidence on the issue of pretext
 
 
 [2]
 I wish to make clear that I agree with the majority that mere failure of the trial court to cite McDonnell Douglas or to employ its exact phraseology does not compel reversal. I believe that the majority would agree with me that express reference to McDonnell Douglas and explicit application of its three-part test would nonetheless be the better practice, as that practice would both facilitate review and minimize litigant dissatisfaction. Where we disagree is on whether proper application of the McDonnell Douglas test can be inferred from the record in the instant case. Unlike the majority, I do not believe it can
 
 
 [3]
 Such statistics would also bear on plaintiff's 42 U.S.C. § 2000e-2(a)(2) claim that defendant illegally classified its female employees, limiting them to lower status positions