KENNETH O'SULLIVAN & others[1] *vs.* NYNEX CORPORATION.

Suffolk. October 14, 1997. - December 16, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Practice, Civil,* Summary judgment. *Statute,* Construction. *Eavesdropping. Telephone Company. Words,* "Intercepting device," "Telephone equipment," "Ordinary course of business."

A system designed for and used by a telephone company randomly to monitor and record telephone conversations in the ordinary course of its business in order to manage the quality of services it provided to its customers was "telephone equipment" within the meaning of the Massachusetts wiretap statute, G. L. c. 272, § 99 [264-266], and the secret interception, monitoring and recording of conversations between customers and telephone company employees by the use of that system in the ordinary course of business for legitimate business purposes did not violate the statute [266-267].

CIVIL ACTION commenced in the Superior Court Department on December 1, 1995.

The case was heard by *John C. Cratsley,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Thomas C. Cameron & Curtis Clark Pfunder* for the plaintiffs.

*Paul V. Kelly (Richard P. Owens* with him) for the defendant.

IRELAND, J. The plaintiffs, Kenneth O'Sullivan and other NYNEX customers (plaintiffs), appeal from the entry of summary judgment against them in favor of the defendant, NYNEX Corporation (NYNEX), on a claim that NYNEX violated G. L. c. 272, § 99 (wiretap statute). We transferred the appeal to this court on our own motion. The plaintiffs argue that the motion judge erred in determining that NYNEX's secret monitoring and recording of calls from NYNEX telemarketers to customers fell within the "telephone equipment" and "common carrier"

[1]Thirty-six other named NYNEX customers. The motion judge found these plaintiffs had standing to challenge the acts of NYNEX under the statute.

exceptions set forth in G. L. c. 272, § 99. Because we conclude that the monitoring and recording of calls by NYNEX does fall within the "telephone equipment" exception to the wiretap statute, we affirm.

The facts relevant to this appeal are as follows. Between September 1 and November 30, 1995, employees of the NYNEX direct marketing center made telemarketing calls to local NYNEX customers. The purpose of these calls was to offer and sell customers new telephone services such as "call return" and "call waiting." Approximately 4% or 90,000 of these calls were randomly selected and anonymously recorded by a computer system known as "AutoQuality!" NYNEX staff were aware of the company practice of monitoring and recording telemarketing calls for quality control purposes. However, NYNEX customers were not informed before, during, or after, that their conversations may have been recorded.

The "AutoQuality!" system retained the recorded conversations for fourteen days. The recordings were reviewed by managers from the NYNEX quality control department, who needed a special code to access the recordings.[2] After fourteen days, the "AutoQuality!" system automatically deleted the calls unless a quality control supervisor specifically instructed it to retain the call. If so instructed, "AutoQuality!" would retain a call for an additional sixty days for further review by the quality control department. The "AutoQuality!" system recorded the entire conversation between NYNEX telemarketing employees and customers. However, it did not make a special note of the customer's name or telephone number.

NYNEX stopped using the "AutoQuality!" system on November 30, 1995. On December 1, 1995, the plaintiffs filed this action in the Superior Court alleging that the secret eavesdropping violated their rights of privacy and was explicitly prohibited by the wiretap statute, G. L. c. 272, § 99. The plaintiffs are NYNEX customers who received telemarketing calls during the three-month period the "AutoQuality!" system was in use. However, the plaintiffs do not know specifically whether their conversations with NYNEX telemarketers were recorded. NYNEX acknowledges that they have no method to recover the names of those whose conversations were recorded by the "AutoQuality!" system.

---

[2]Prior to installation of the "AutoQuality!" system, quality control supervisors would randomly monitor conversations between telemarketers and NYNEX customers.

The Massachusetts wiretap statute prohibits the secret use of intercepting devices by private individuals.[3] See G. L. c. 272, § 99. An "intercepting device" is defined as "any device or apparatus which is capable of transmitting, receiving, amplifying or recording a wire or oral communication . . . [*other than* telephone equipment] being used by a communications common carrier in the ordinary course of its business" (emphasis added). G. L. c. 272, § 99 B 3.

Under § 99 D of the wiretap statute, certain types of interceptions of wire or oral communications are permitted. Relevant to this case, the statute explicitly permits employees of communication common carriers who are "engaged in any activity which is a necessary incident to the rendition of service" to randomly monitor communications for mechanical or service quality control checks.[4] G. L. c. 272, § 99 D 1 a.

NYNEX filed a motion to dismiss or in the alternative a motion for summary judgment on January 12, 1996. The judge ruled that NYNEX's "AutoQuality!" system was excluded from the statutory definition of "intercepting device" because it was "telephone equipment" used "in the ordinary course of business" and therefore within the statutory exception contained in the definition. Moreover, the judge determined that, even if the "AutoQuality!" system were an intercepting device, that NYNEX's activities were exempted from the statute because, as a communications common carrier, NYNEX was permitted to engage in random monitoring of calls for mechanical or service quality control checks. Thus, the judge granted NYNEX's motion for summary judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

[3]In addition, the use of intercepting devices by law enforcement officers is subject to strict judicial oversight. G. L. c. 272, § 99 A. See *Commonwealth* v. *Vitello*, 367 Mass. 224, 244 (1975).

[4]General Laws c. 272, § 99 D 1 a, states that "[i]t shall not be a violation of [the wiretap statute], for an operator of a switchboard, or an officer, employee, or agent of any communication common carrier, whose facilities are used in the transmission of a wire communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a *necessary* incident to the rendition of service or to the protection of the rights or property of the carrier of such communication . . . provided, that said communication common carriers shall not utilize service observing or random monitoring *except for mechanical or service quality control checks*" (emphasis added).

with [supporting] affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974); *MacLean* v. *Delinsky*, 407 Mass. 869, 874 (1990). There is no disputed issue of material fact here. The only controversy concerns the proper application of the wiretap statute to the undisputed facts.

The plaintiffs contend that NYNEX's secret monitoring and recording of its telemarketers' calls to customers was not excused by the "telephone equipment" exception of the Massachusetts wiretap statute. They assert that the intercepting device NYNEX used in recording the calls was not "telephone equipment" within the meaning of the statute, and that the intercepting device was not used by NYNEX "in the ordinary course of its business."

To determine whether the "AutoQuality!" system was "telephone equipment," used by NYNEX in the "ordinary course of business," it is instructive to look at Federal case law interpreting the cognate provisions under the Federal wiretap statute.[5] However, when applying Federal case law to the interpretation of the Massachusetts wiretap statute, we must be mindful that the Massachusetts statute must be at least as protective of individual rights as the Federal statute. See *United States* v. *McKinnon*, 721 F.2d 19 (1st Cir. 1983); *Commonwealth* v. *Vitello*, 367 Mass. 224, 247 (1975).

To come within the definition of "telephone equipment," the device must be used or supplied by the telephone company in the ordinary course of its business. See *Williams* v. *Poulos*, 11 F.3d 271, 280 (1st Cir. 1993) (system consisting of "alligator clips attached to a microphone cable at one end" and an "interface connecting [a] microphone cable to a [video cassette recorder] and a video camera" on the other is not "telephone equipment"); *Epps* v. *St. Mary's Hosp. of Athens, Inc.*, 802 F.2d 412, 415-416 (11th Cir. 1986) (dispatch console installed by

---

[5]The Massachusetts wiretap statute "in major portion matches section for section the provisions of [the Federal statute regulating interception of wire and oral communications]." *Commonwealth* v. *Vitello*, 367 Mass. 224, 251 (1975). Because the Massachusetts Legislature adopted the language of the Federal statute regulating the interception of wire and oral communications, we shall construe the Massachusetts statute in accordance with the construction given the cognate Federal statute by the Federal courts. See *Crosland* v. *Horgan*, 401 Mass. 271, 275 (1987); *Vasys* v. *Metropolitan Dist. Comm'n*, 387 Mass. 51, 54 (1982).

telephone company considered "telephone equipment"); *Sanders* v. *Robert Bosch Corp.*, 38 F.3d 736, 740-741 (4th Cir. 1994) (voice logger system purchased and installed by employer was not "telephone equipment"); *James* v. *Newspaper Agency Corp.*, 591 F.2d 579, 581 (10th Cir. 1979) (monitoring device installed by telephone company implicitly considered "telephone equipment"). In *Sanders*, a corporation purchased a voice logger system and covertly taped the telephone conversations of its guards. The court determined that the voice logger was not "telephone equipment" within the meaning of the Federal wiretap statute because the telephone company did not supply the voice logger to Bosch in the ordinary course of its business. *Id.*

If the device is connected directly to the phone line it is more likely to be "telephone equipment" within the meaning of the wiretap statute. See *Deal* v. *Spears*, 980 F.2d 1153, 1157 (8th Cir. 1992). See also *Commonwealth* v. *Todisco*, 363 Mass. 445, 452 (1973) ("telephone equipment" does not include eavesdropping devices external and extraneous to regular telephone devices). In *Deal*, employers purchased a recording device from a retail store and installed it on a telephone extension. They recorded approximately twenty-two hours of conversations between an employee and her boy friend without informing either of them of the recordings. The court concluded that the recording device was not telephone equipment within the meaning of the exception because it was not purchased from the telephone company; and it was connected to an extension phone, not directly to the telephone line. *Id.* at 1157-1158.

The "AutoQuality!" system utilized by NYNEX is "telephone equipment" within the meaning of the Massachusetts wiretap statute, because unlike the "voice logger" in *Sanders*, the system was designed for and used by the telephone company randomly to monitor and record telephone conversations in the ordinary course of its business to manage the quality of services it provided to its customers. *Sanders, supra* at 740-741. Moreover, unlike *Deal*, where the employers purchased the recorder from a retail store and connected it to an extra telephone line, the "AutoQuality!" system was designed to operate with telephone lines and had no function outside of its application to telephone lines. *Deal, supra* at 1157. Finally, the fact that the official product description of the "AutoQuality!" system described it as "a call center management tool that automates

performance monitoring" indicates further that the system was meant to be used by communications carriers in the ordinary course of their business.

Having determined that the "AutoQuality!" system is "telephone equipment," the next question we must answer is whether NYNEX was using the system to intercept calls "within the ordinary course of business." G. L. c. 272, § 99. Most cases that have discussed whether an interception is "within the ordinary course of business" involved situations where an employer was monitoring employee conversations. See, e.g., *Crosland* v. *Horgan*, 401 Mass. 271, 274 (1987); *James* v. *Newspaper Agency Corp.*, 591 F.2d 579, 581 (10th Cir. 1979); *United States* v. *Harpel*, 493 F.2d 346, 351 (10th Cir. 1974); *Ali* v. *Douglas Cable Communications*, 929 F. Supp. 1362, 1379-1380 (D. Kan. 1996). From those cases, the general rule is that monitoring business calls is legal, but eavesdropping on private calls is illegal unless there "is a legitimate business purpose" for the employer to monitor an employee's conversation.[6]

An employer may monitor by extension phone an employee's business-related calls as long as the employer offers a legitimate business reason that justifies such monitoring. *See Ali, supra* at 1380; *James, supra* at 581; *Sanders, supra* at 741 (no legitimate business reason where company had no reason to expect "bomb threats"); *Deal, supra* at 1158 (monitoring not within boundaries of the ordinary course of business when employer's suspicions did not justify the extent of intrusion); *Crosland, supra* at 271-272 (plaintiff argued that it is not within employer-hospital's ordinary course of business to investigate criminal activities such as bomb threats; however, court held that it was in ordinary course of business for hospital to protect its patients). In *James*, interceptions were made "in the ordinary course of business" when an employer had the telephone company install a monitoring and recording device on the business line, so that a manager could monitor business calls made by employees to address "the concern by management over abusive language used by irate customers when called upon to pay their bills, coupled with the possible need to give further training and supervision

---

[6]For example, employers may record private conversations of employees when they suspect that an employee is using the telephone in an unauthorized manner, or engaged in defrauding the employer. See *Deal* v. *Spears*, 980 F.2d 1153, 1158 (8th Cir. 1992) (employee suspected of burglarizing store and of making unauthorized personal calls from employer's telephone).

to employees dealing with the public." *James, supra* at 581. In reaching this conclusion, the *James* court noted that the employees making the calls to customers were aware that their calls were monitored.[7] *Id.*

Although the *James* and *Ali* cases dealt primarily with extension monitoring by supervisors, the practice of recording employees' conversations with customers was determined to be within the bounds of accepted business practice in *Briggs* v. *American Air Filter Co.*, 630 F.2d 414, 418 (5th Cir., 1980). Even though it may be more difficult to justify recording the customer's responses, it would be extremely difficult for a business to gauge the performance of its employees without hearing both sides of the conversation. In addressing the plaintiffs' privacy concerns, we note that the intrusion was minimal. Access to the recordings was strictly limited to quality management supervisors; the "AutoQuality!" system automatically erased the recordings after fourteen days unless otherwise instructed; the recordings were anonymous; and the conversations were limited to those necessary for NYNEX training and supervision.

NYNEX had a legitimate business interest in managing and monitoring the quality of telephone calls made by their telemarketers to NYNEX customers. NYNEX's interest in ensuring that the telephone calls made complied with the guidelines imposed by the telecommunications statutes (G. L. c. 166, §§ 1 et seq.), coupled with the possible need to give further training and supervision to employees dealing with the public, supports this proposition. See *James, supra* at 581. We conclude that NYNEX used the "AutoQuality!" system within the ordinary course of its business. Consequently, the "telephone equipment" exception applies to NYNEX's activities as a matter of law, and their motion for summary judgment was properly granted.

Because we have decided that the "AutoQuality!" system falls within the "telephone equipment" exception of the wiretap statute, we need not decide whether the "common carrier" exception applies.

*Judgment affirmed.*

[7]The *Ali* court agreed with the conclusion reached in *James*, but held that employee's personal calls may not be legally monitored unless the employer has disclosed it to the employee. *Ali* v. *Douglas Cable Communications*, 929 F. Supp. 1362, 1380-1381 (D. Kan. 1996).