Smith, J.
This matter comes before the court on the motion of the plaintiff, Thomas P. Dillon (“Dillon”) for summaiy judgment pursuant to Mass.RCiv.P. 56(c). Dillon alleges that the defendant’s practice of recording the telephone conversations of employees was unlawful, in violation of G.L.c. 272, §99 (the “Wiretap Act”). The defendant, Massachusetts Bay Transportation Authority (“MBTA”) denies any illegality, claiming that: 1) the MBTA is not amenable to suit under the Wiretap Act because it is not a “person” as defined in the statute, 2) the recording practices were known to plaintiff, and therefore not secret, 3) the equipment used by the MBTA was not an “intercepting device” as defined within the statute, and 4) the office intercommunications system exception of the statute applies in this instance. Accordingly, the MBTA has also moved for summaiy judgment in its favor. For the following reasons, defendant’s motion for summaiy judgment is ALLOWED.
BACKGROUND
The facts of the case are uncomplicated. As stated above, this action is one for unlawful interception of telephone conversations. The controlling statute is G.L.c. 272, §99. From approximately September 1993 to September 1996, the MBTA recorded all telephone calls on virtually every phone line it maintained. *281 Among the devices used by the MBTA to record the telephone conversations were a “Dictaphone 5000" recording system, the Magnasync 2-4/p-60, and a Lanier System machine, none of which were provided to the MBTA by a ’’communications common carrier" (i.e. telephone company).
The MBTA maintains that the recordings were made both for the purpose of public safety and for the protection of MBTA employees. Specifically, the MBTA maintains that the recordings are instrumental in reviewing the circumstances surrounding the reporting and investigation of accidents and their causes, and in the proper and efficient implementation of responses to repair and emergency calls.
On either May 6, 1996 or May 7,1996 (there is some dispute among the parties as to the correct date) Dillon, an MBTA employee, used a telephone at the MBTA’s Riverside facility to contact another MBTA employee, a Mr. Joseph Musso (“Musso”). During his conversation with Musso, Dillon made allegedly disparaging remarks about fellow employees. These remarks became the focus of an internal disciplinary investigation, the result of which was the issuance of a written warning to Dillon.
In June of 1996, Dillon, through the Alliance of MBTA Unions, grieved the incident, alleging, among other things, that he had been illegally wiretapped. Dillon filed suit in this court on September 3, 1996.
DISCUSSION
This court grants summary judgment where there are no genuine issue of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17.
“The motion must be supported by one or more of the materials listed in rule 56(c) and, although that supporting material need not negate, that is, disprove, an essential element of the claim of the party on whom the burden of proof at trial will rest, it must demonstrate that proof of that element at trial is unlikely to be forthcoming.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991); See Celotex Corp. v. Catrett, 477 U.S. 317, 328 (1986) (White, J., concurring).
G.L.c. 272, §99(C)(1) provides that;
... any person who willfully commits an interception, attempts to commit an interception, or procures any other person to commit an interception or to attempt to commit an interception of any wire or oral communication shall be fined ... or imprisoned . . .
Section 99(C)(1) goes on to state that:
“Proof of the installation of any intercepting device by any person under circumstances evincing an intent to commit an interception, which is not authorized or permitted by this section, shall be prima facie evidence of a violation of this subparagraph.” (Emphasis added.)
The term “intercepting device” is defined by G.L.c. 272, §99(B)(3), and reads, in pertinent part, as follows:
“. . . ‘intercepting device’ means any device or apparatus which is capable of transmitting, receiving, amplifying, or recording a wire or oral communication other than a hearing aid or similar device which is being used to correct subnormal hearing to normal and other than any telephone or telegraph instrument, equipment, facility, or a component thereof, (a) furnished to a subscriber or user by a communications common carrier in the ordinary course of its business under its tariff and being used by the subscriber or user in the ordinary course of its business; or (b) being used by a communications common carrier in the ordinary course if its business.” (Emphasis added.)
G.L.c. 272, §99(B)(3).
The above highlighted portion of G.L.c. 272, §99, commonly referred to as the “telephone equipment exception,” is the focal point of the present litigation. The MBTA claims that the system it used to monitor and record the conversation in the present matter (as well as its other devices) falls within this exception, thereby entitling the MBTA to summary judgment in its favor. The analogous portion of the Federal Wiretap Statute, 18 U.S.C. §2510(5)(a), defines “electronic, mechanical, or other device” as:
“any device or apparatus which can be used to intercept a wire, oral, or electronic communication other than (a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business; or (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties;...” (Emphasis added.)
18 U.S.C. §2510(5)(a) (1970 & Supp. 1997).
While there is no dispute among the parties that the MBTA was using the equipment in the ordinary course of its business, Dillon contends that because the equipment used by the MBTA was not furnished to it by “a communications common carrier,” the exception does not apply. This court finds that, notwithstanding *282 the fact the equipment was not provided to the MBTA by a “common communications carrier,” G.L.c. 272, §99(B)(3)(a) nonetheless applies, shielding the MBTA from liability in the present matter.
Examination of a recent case decided by the Supreme Judicial Court, O’Sullivan v. NYNEX Corporation, 426 Mass. 261 (1997), is helpful in understanding why this court will not exercise a strict literal reading to G.L.c. 272, §99(B)(3)(a).
In the NYNEX case, the Court was faced with the problem of interpreting whether a device used by NYNEX to record calls from NYNEX telemarketers to NYNEX customers was correctly found to have fallen within both the “telephone equipment exception” and “common carrier exception” of G.L.c. 272, §99. NYNEX, 426 Mass. at 261-62. Since it is clear that the “common carrier exception” does not apply in the present matter, this court’s review of NYNEX will be limited to the Supreme Judicial Court’s analysis of the “telephone equipment exception" in that case.
Before analyzing the relevant statutory provisions, the Supreme Judicial Court noted the importance of looking to federal case law when construing provisions of the Massachusetts Wiretap Act. Id. at 264. Citing to Crosland v. Horgan, 401 Mass. 271, 275 (1987), and Vasys v. Metropolitan Dist. Comm’n, 387 Mass. 51, 54 (1982), the NYNEX Court instructed that since the Massachusetts Legislature adopted the language of the Federal statute regarding the regulation of the interception of wire and oral communications, “we shall construe the Massachusetts statute in accordance with the construction given the cognate Federal statute by the federal courts. NYNEX at 6, n.5. This court shall do the same.
Although the Supreme Judicial Court in NYNEX focused primarily on whether the device used to record the telephone calls in that case was “telephone equipment" within the meaning of the “telephone equipment exception,” not whether the exception required that the alleged “telephone equipment” be provided by a “communications common carrier" (the query in the present case) the NYNEX Court’s analysis is nonetheless instructive.
In finding that the equipment used by NYNEX was, indeed, “telephone equipment” within the meaning of the statute, the Court focused, in part, on the fact that the system was “designed to operate with telephone lines and had no function outside of its application to telephone lines.” Id. at 8. Reasoning that “[i]f the device is connected directly to the phone line it is more likely to be ‘telephone equipment’ within the meaning of the wiretap statute,” the Court concluded that the device used by NYNEX, connected directly to the phone lines and fully automated, fell within the “telephone equipment exception.” Id. The devices used by the MBTA, also connected to the phone lines and similarly automated, were deeply integrated into the MBTA’s phone system, and were used for similar, legitimate business purposes as the device in NYNEX.
The fact that the device in NYNEX was configured by someone other than NYNEX did not affect whether the exception still applied. In fact, the Court was aware of this distinction, having noted that the system used was “designed for and used by" the telephone company to “... manage the qualify of services it provided to its customers.” Id. Indeed, the United States Court of Appeals, First Circuit, in Williams v. Poulos, 11 F.3d 271, 280 (1993), noted that “[sjection 2510(5)(a) does not require that the acquisition device be configured by a provider of electronic communication service.” Accordingly, this court will not allow the lack of the MBTA, in not purchasing or ordering its device from a “communications common carrier,” to defeat the protection afforded to it by the “telephone equipment exception" of G.L.c. 272, §99.
When 18 U.S.C. §2510 was amended in 1986, Congress was concerned that the statute had, in many ways, become “hopelessly out of date.” S. Rep. No. 541, 99th Cong., 2d Sess. at 2 (1986). Congress emphatically stressed this point when it found:
Nor has it kept pace with changes in the structure of the telecommunications industry. Today we have large-scale electronic mail operations, computer-to-computer data transmissions, cellular and cordless telephones, paging devices, and video teleconferencing. A phone call can be carried by wire, by microwave or fiber optics. It can be transmitted in the form of digitized voice, data or video. Since the divestiture of AT&T and deregulation, many different companies, not just common carriers, offer a wide variety of telephone and other communications services. It does not make sense that a phone call transmitted via common carrier is protected by the current federal wiretap statute, while the same phone call transmitted via a private telephone network such as those used by many major U.S. corporations today, would not be covered by the statute.
Id. at 2-3.
This language accurately reflects the significance of the changes in the telecommunications industry since the enactment of G.L.c. 272, §99. In accord with the construction given the Federal Statute, this court finds that the term “communications common carrier,” as used in G.L.c. 272, §99 should be read in a manner that more closely reflects the reality of the telecommunications industry as it exists today, not as it existed two decades ago. Defendant’s motion for summary judgment is ALLOWED.
ORDER
For the foregoing reasons it is hereby ORDERED that plaintiffs motion for summary judgment is DENIED. It is further ORDERED that summary judgment enter in favor of the defendant, Massachusetts Bay Transportation Authority.