Sikora, Mitchell J., J.
INTRODUCTION
The plaintiffs, David Peters (“Peters”) and Catherine Cleveland (“Cleveland”), brought this action against defendants, EquiServe, Inc. (“EquiServe”), DST System, Inc. (“DST”), Computershare Ltd. (“Computershare”), Thomas Lally (“Lally”), and Cathleen Moynihan (“Moynihan”). Plaintiffs allege 1) violations of the Massachusetts Wiretap Act, G.L.c. 272, §99; 2) violations of the Massachusetts privacy statute, G.L.c. 214, § 1(B); and 3) breach of contract based on provis *621 ions in the EquiServe Employee Handbook. The parties have presented and argued cross motions for summaiy judgment.
SUMMARY JUDGMENT RECORD
The summaiy judgment record reveals the following undisputed facts.
Defendants include EquiServe, Inc., DST System, Inc., Computershare Ltd., Thomas Lally, and Cathleen Moynihan. EquiServe, currently known as and owned by Computershare, is a corporation based in Canton, Massachusetts that provides direct account management services to shareholders. DST is a corporation based in Kansas City, Missouri, and the owner of EquiServe at the time relevant to this matter. Lally held the position of Assistant Director of Human Resources and Moynihan held the position of Director of Human Resources at EquiServe in Canton at the time of this incident. Plaintiff Peters was a manager in the Call Center of EquiServe, Inc. He supervised Cleveland, who held the supervisory position of Unit Leader in the Call Center.
On or about February 14, 2005, Peters and Cleveland called each other to discuss issues concerning an employee customer service representative whom they both supervised named Jennifer Marley (“Marley”). During the phone call, Peters cautioned Cleveland that they were “on a recorded line,” and that therefore he was going to speak “hypothetically.” Conversation Between Defendants, p. 3. The phone call concerned ways to get Marley to resign. The significant portion of the conversation includes the statement by Peters, “You know what the other way is. The other way is to, to do something which she can’t stand, and will push her to the brink . . . let’s just continue to ... do the other things which will aggravate and frustrate . . . and then you know what the person is going to do .. . the person is just going to post out.” Id. at 4-6.
Calls made by or to customer service representatives at the EquiServe Call Center were on “Callmaster” telephones. Each call was automatically digitally recorded and stored by equipment named “Mediastores.” The stored calls could be retrieved through the use of “Replay” desktop software. An authorized user could retrieve a stored call through the Replay software, and receive the call via a .wav file, which would appear on the user’s desktop. Once on the desktop, the authorized user could listen to the call, save it, or forward it. In order to obtain the Replay software, a manager had to authorize access. Once authorized, the Technical Department would configure the employee’s identification number in order to obtain access to the Replay software.
All Call Center employees were aware that calls made on Callmaster phones were recorded. If an employee needed to make a personal phone call, he/she could use a regular phone located in the Call Center. The regular phones did not have recording devices attached to them. Peters had both a Callmaster and regular phone on his desk. Cleveland had only a Callmaster phone on her desk. EquiServe’s policy reasons for recording all calls made on the Callmaster telephones were 1) to comply with the applicable federal and state regulations and 2) to monitor the quality of customer service to shareholder clients.
The plaintiffs’ call was recorded and saved, in accordance with the process for each call made on the Callmaster telephones. Robert Morris (“Morris”) was an EquiServe Customer Service Representative who was not authorized to use the Replay software, but who had it on his desktop. Morris retrieved the plaintiffs’ recorded phone call from the Replay software, and saved it on the company network, a system, which anyone in EquiServe could access. Morris directed Marley, through the use of a “pop-up,” to the conversation in question located on the company network. The call greatly upset Marley.
Sometime after Marley retrieved the call, the incident came to the attention of Michael Lapolla (“Lapolla”), the Senior Managing Director of Shareholder Services and the plaintiffs’ supervisor. The .wav file was forwarded to Lapolla from Peters who titled the email “breachofprlvacy.wav.” Lapolla forwarded the call to Lally in Human Resources and asked for his advice on how to handle the situation. One of Lally’s job responsibilities was to “investigate complaints about alleged employee misconduct and recommend to managers what discipline . . . would be appropriate.” Lally deposition, p. 2. Lally interviewed each plaintiff, and with the approval of Moynihan, punished Peters and Cleveland by 1) depriving them of their supervisor responsibilities and 2) denying them personal access to the building via their ID cards. Morris was permitted to resign; he gave two weeks notice.
Because of their new positions, Peters and Cleveland claim, they suffered physical and emotional problems requiring medical attention. As a result, they were absent from work for extended periods of time. EquiServe terminated their employment for excessive absenteeism.
Each EquiServe associate upon being hired was given an “Associate Handbook” [“Handbook’). The Handbook outlined company policies and rules of employment, professions development, and performance and compensation guidelines. On the first page, EquiServe states, “the language used in this Handbook is not intended to create, nor to be construed to constitute, a contract between EquiServe and any or all of its associates.” Handbook, p. 1. Other pertinent clauses from the Handbook include:
It is the policy of EquiServe that all associates are employed at the will of EquiServe for an indefinite period. Associates may resign from EquiServe at any time, for any reasons and may be terminated by EquiServe at any time, for any lawful reason or *622 no reason, and with or without notice. Handbook, p. 18.
As a general guideline four (4) occurrences of absence in any consecutive six (6) month period are considered excessive . . . The general guideline on punctuality states that (5) or more separate incidents of unexcused tardiness in a six month period are considered excessive. Handbook, p. 35.
[N]o associate without the express written permission of a member of the Human Resources Department or the Management Council, shall use any recording device to tape a supervisor, manager, co-associate or other person. Violation of this policy could subject the offender to discipline up to and including discharge, and/or criminal actions. Handbook, p. 9.
DISCUSSION
This court will grant summary judgment if the material facts are undisputed and if the movant is entitled to judgment as a matter of law. MassR.Civ.P. 56(c)); Cassesso v. Comm. of Corr., 390 Mass. 419, 422 (1983); Com. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party shoulders the burden of affirmatively demonstrating the absence of a triable issue, and its entitlement on the record to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing parly’s case or by demonstrating the opposing party’s lack of any reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).
A. Count I: Violation of the Massachusetts Wiretap Act, G.L.c. 272, §99
The plaintiffs claim that the defendants violated G.L.c. 272, §99(0) because 1) EquiServe’s employee, Morris, intercepted and disclosed the contents of the plaintiffs’ conversation to another employee, and because 2) Lally, Moynihan, and EquiServe used the contents of the conversation to punish the plaintiffs. The defendants argue that no statutory violation occurred because the recording 1) was not done in secret; 2) falls under the Telephone Equipment Exception to the statute; and 3) was performed by an employee not acting within the scope of his employment.
Under the Massachusetts Wiretap Act any “aggrieved person whose oral or wire communications were intercepted, disclosed or used except as permitted or authorized by this section . . . shall have a civil cause of action against any person who so intercepts, discloses or uses such communications or who so violates his personal, properly or privacy interest!.]” G.L.c. 272, §99(Q). The term interception is defined as “to secretly hear, secretly record . . . the contents of any wire or oral communication!.]” Id. §99(B)(4). Unlike the federal Wiretap Act, §99(Q) “does not require proof of a willful use of an improperly intercepted communication.” Pine v. Rust, 404 Mass. 411, 414 (1989).
In the Preamble of the Wiretap Statute, the Legislature wrote that “the uncontrolled development and unrestricted use of modern electronic surveillance devices pose grave dangers to the privacy of all citizens of the commonwealth. Therefore, the secret use of such devices by private individuals must be prohibited.” G.L.c. 272, §99(Q). The SJC has held that a call is not considered secret if the caller has “actual knowledge of the recording.” Commonwealth v. Jackson, 370 Mass. 502, 507 (1976) (caller stated, “I know the phone is tapped”). Actual knowledge is “proved where there are clear and unequivocal objective manifestations of knowledge, for such indicia are sufficiently probative of a person’s state of mind[.]” Id.
Here, the recording was not secret. The plaintiffs both knew as employees and supervisors of the EquiServe Call Center that all calls made to or from the Callmaster telephones were recorded. The plaintiffs themselves made note of this fact when they were on the phone together. Peters said, “well, we are on a recorded line ... so I [will] talk um, hypothetically!.]”
Furthermore, Morris’s actions cannot be used to hold EquiServe liable for Morris’s alleged violations of the Wiretap Act. Under agency law, “respondeat superior is the proposition that an employer, or master, should be held vicariously liable for the torts of its employee, or servant, committed within the scope of employment.” Dias v. Brigham Med. Assocs, Inc., 438 Mass. 317, 319-20 (2002), citing Restatement (Third) of Agency §2.04. “Conduct of an agent is within the scope of employment if it is of the kind he is employed to perform . . . ; if it occurs substantially within the authorized time and space limits . . . ; and if it is motivated, at least in part, by a purpose to serve the employer . . .” Wang Labs, Inc. v. Bus. Incentives, Inc., 398 Mass. 854, 859 (1986) (citations omitted).
The meaning of vicarious liability under the Massachusetts Wiretap Act emerges from the circumstances of Birbiglia v. St. Vincent Hosp., Inc., 427 Mass. 80 (1998). In Birbiglia, a hospital physician secretly recorded conversations with a staff member of the hospital. Id. at 87. The hospital board subsequently used the secret tape recording to evaluate the staff member. Id. In deciding that a trial judge’s denial of the hospital’s motion for judgment n.o.v. was proper, the SJC reasoned that “[t]he hospital’s knowledge was appropriately established by proof that one or more of its agents, acting within the scope of their authority, knew enough collectively to establish by proof that the memoranda were the product of unauthorized recordings.” Id.
*623 The rationale of the Birbiglia decision cannot stretch so far as to impose liability upon the present defendants. The two situations differ conspicuously. First, Morris did not act within the scope of conduct of the kind he was employed to perform. Morris was a customer service representative working in the EquiServe Call Center. As admitted by both parties, Morris was not authorized to use the Replay software, nor was he employed to listen to recorded calls or to have any role with the software enabling the recording of calls. Second, Morris was not motivated to serve EquiServe in this instance. His motive was personal. The plaintiffs themselves characterized Morris as being a “disgruntled employee” whose anger resulted from the plaintiffs’ “previous discipline of him.” Cmpl., §§14-15, 16(b). EquiServe cannot be held liable for the conduct of an employee who seeks revenge by self-interested deviation from his assigned work.
Further, the defendants appear to enjoy an independent defense under the telephone equipment exception of G.L.c. 272, §99(B)(3). In pertinent part, that provision excepts from liability any interception made from “any telephone or telegraph instrument, equipment, facility, or component thereof, (a) furnished to a subscriber or user by a communications common carrier in the ordinary course of its business . . . and being used by the subscriber or user in the ordinary course of its business.” Id. A “communications common carrier” includes not only telephone companies, but also “non-telephone companies that supply telephone equipment.” Dillon v. Mass. Bay Transp. Auth., 49 Mass.App.Ct. 309, 316 (2000). “Ordinary course of business” has been defined as any action that has a “legitimate business purpose.” Id. at 319, quoting O’Sullivan v. NYNEX Corp., 426 Mass. 261, 266 (1997).
In Dillon, a group of MBTA employees filed a class action suit against the MBTA for secretly recording the employees’ calls in violation of the Wiretap Act. The Appeals Court affirmed the trial court’s decision [8 Mass. L. Rptr. 280] to grant summary judgment to the MBTA. It held that the employer has legitimate business purposes for recording calls, such as “efficiency, safety, and sound maintenance record-keeping.” Id. at 319. Similarly, in O’Sullivan, the court found that “monitoring the quality of telephone calls from telemarketers to customers” constituted a legitimate business purpose. O’Sullivan, 426 Mass. at 267.
Here, EquiServe maintains that its purposes for recording all calls made on Callmaster phones included 1) compliance with regulations and 2) supervision of Call Center employees for their customer service skills. Under current case law, both purposes for recording calls would be considered legitimate. Finally, this case falls all the more appropriately within the meaning of Dillon because Peters and Cleveland (unlike the unsuccessful MBTA employees) knew that their conversation was being recorded.
No indulgent consideration of the evidence can save Count I from summary judgment disposition. No violation of G.L.c. 272, §99 has occurred. The Court therefore ALLOWS the defendants’ motion for summary judgment, and DENIES the plaintiffs’ cross motion for summary judgment. Hogan v. Riemer, 35 Mass.App.Ct 360, 364 (1993).
B. Count II: Violation of the Massachusetts Privacy Act, G.L.c. 214, §1(B)
The plaintiffs next claim that their punishment and eventual termination by the defendants violated the Massachusetts Privacy Act. G.L.c. 214, § 1 (B). They argue that their expectation of privacy was substantially interfered with 1) because Morris accessed their stored conversations, and 2) because the defendants used the taped conversation to punish the plaintiffs. The plaintiffs state that they had an expectation that their conversation on the Callmaster phone would be kept confidential by EquiServe. Therefore, they believe that the defendants violated their right of privacy by use of the taped conversation.
The Massachusetts Privacy Act simply states that “a person shall have a right against unreasonable, substantial or serious interference with his privacy.” G.L.c. 214, § 1 (B). Under Massachusetts law, “public disclosure of private information must be unreasonable to constitute invasion of privacy.” Bennett v. City of Holyoke, 230 F.Sup.2d 207, 222 (D.Mass. 2002). To fall under the protection of the Massachusetts privacy statute, disclosed facts must be “of a highly personal or intimate nature.” Id., quoting Bratt v. Int’l Bus. Mach. Corp., 392 Mass. 508, 509 (1994) (disclosing the contents of a personnel file violates the privacy statute in certain situations). Compare Mulgrew v. Taunton, 410 Mass. 631, 637 (1991) (no violation where police officer informed cadets of fellow cadet’s dismissal for failing a drug test), and Gauthier v. Police Com’r of Boston, 408 Mass. 335, 338 (1990) (no violation where chief of police, acting in official capacity, disclosed information about plaintiffs fitness to be a police officer), with Wagner v. City of Holyoke, 241 F.Sup.2d 78, 100 (D.Mass. 2003) (violation where a person was given access to plaintiffs confidential files containing information on domestic disputes), and Bennett, 230 F.Sup.2d at 223 (violation where plaintiffs psychiatric evaluation was disseminated to non-supervisoiy officers). “The disclosure of facts between co-workers is sufficient to violate privacy.” Bennett, 230 F.Sup.2d at 223; see also Bratt, 392 Mass. at 519 (“the disclosure of private facts about an employee among other employees in the same corporation can constitute sufficient publication under the Massachusetts right of privacy statute”).
At the same time, “legitimate countervailing business interests in certain situations may render the disclosure of personal information reasonable and not actionable under the statute . . . [but,] it should be balanced against the seriousness of the intrusion on *624 the employees’ privacy.’’ Id. at 308. Cort v. Bristol-Myers Co., 385 Mass. 300, 308, 310 (1982). This privilege “serves the public purpose of promoting the free flow of information in the workplace, and it is lost only when the employer recklessly makes unnecessary, unreasonable or excessive publication.” Bratt, 392 Mass. at 509, 515 n. 11.
The issues presented in this case are 1) whether the plaintiffs had an expectation of privacy, and, 2) if so, whether the defendants’ actions constitute an unreasonable, substantial, or serious interference with that expectation of privacy. If both questions are answered yes, then this court must balance the plaintiffs’ right of privacy with the defendants’ legitimate business interest. See Bratt, 392 Mass. 508. Here, the plaintiffs did not have an expectation of privacy; they acknowledged they were being recorded. Yet, even if they did have an expectation of privacy, the plaintiffs would still fail to carry their burden because their conversation was not “of a highly personal or intimate nature.”[2] The cases cited above involve highly personal issues such as medical and psychiatric records, and domestic circumstances. In stark contrast, the present case involves two supervisors discussing, on an acknowledged recorded line, whether to grant an employee a day off, and how to get her to resign. The conversation does not involve any personal or intimate facts about either plaintiff. Furthermore, the defendants had a legitimate business interest in 1) recording conversations made on the Callmaster phones, and 2) using the recorded conversation to resolve personnel issues.[3] Summary judgment for the defendants on the claim of violation of the Massachusetts Privacy Act is therefore appropriate.
The Court therefore ALLOWS the defendants’ motion for summary judgment on Count II; and DENIES the plaintiffs’ cross motion for summary judgment.
C. Count III: Breach of Contract
The plaintiffs’ next claim is breach of contract based on a theory that they are third-party beneficiaries of the terms of the 2000 EquiServe Associate Handbook. The plaintiffs specifically refer to the EquiServe rule that
no associate without the express written permission of a member of the Human Resource Department or the Management Council, shall use any recording device to tape a supervisor, manager, co-associate or other person. Violation of this policy could subject the offender to discipline up to and including discharge, and/or criminal actions.
Associate Handbook, p. 10.
They argue that Morris breached the contract implied by the Associate Handbook when he listened to and forwarded the taped phone call. Thus, the plaintiffs, as third-pariy beneficiaries, are allegedly entitled to enforce the contract’s implied provisions relating to an expectation of privacy against the employer and Morris. Plaintiffs’ Memorandum of Law, p. 18.
An at-will employee may be terminated at any time for any reason not in violation of a clearly established public policy. Upton v. JWP Businessland, 425 Mass 756, 757 (1997). As a general rule, when an employment contract, express or implied, contains no definite period of employment, it establishes employment at-will. Jackson v. Action for Boston Cmty. Dev. Inc., 403 Mass 8, 9 (1988). Here, it is undisputed that both plaintiffs are employees at-will.
Even for employees at-will, an employee handbook in some circumstances may “form the basis of an implied employment contract.” O’Brien v. New England Tel & Tel, 422 Mass. 686, 691 (1996). “Where an employee signs a personnel policy, negotiates specific terms as a condition of beginning or continuing employment, or where an employer calls special attention to the policy, a finding that the terms of the policy form the basis of an implied contract may be justified.” Weber v. Cmty. Teamwork, Inc., 434 Mass. 761, 780 (2001), citing O’Brien, 422 Mass. at 692-93; Jackson, 403 Mass. at 15 (1988); Hillstrom v. Best Western TLC Hotel, 265 F.Sup.2d 117, 129 (D.Mass. 2003). In determining whether an employee handbook or manual could potentially form the basis of a contract, one must look at 1) whether “there was negotiation over the terms of the personnel manual”; 2) whether “the employee signed the manual, manifested assent to it or acknowledged understanding of its terms”; and 3) whether “the manual provides only management directives or general guidance as to the employer’s policies, or whether it sets forth detailed mandatory conduct, mutual obligations, promises of treatment and benefits, and procedures for employees and employer to follow.” O’Brien, 422 Mass at 692-93. In addition, “express disclaimers concerning the creation of contractual or legal rights” are relevant, but not dispositive. Id. at 691, 694.
In the present case, the Associate Handbook clearly states that it is not a binding contract: “(t]he language used in this Handbook is not intended to create, nor to be construed to constitute, a contract between EquiServe and any or all its associates.” Associate Handbook, p. 1. Additionally, the plaintiffs did not negotiate any of the terms in the Handbook. Lally Aff., §5, uncontradicted. Furthermore, the terms stated in the Handbook were for general guidance; “(t]his Handbook has been prepared to give associates a guide to some of EquiServe’s expectations and a general overview of the benefits and policies available at EquiServe.” Associate Handbook, p. 1. No evidence materializes in the record that the plaintiffs were required to acknowledge, assent, and sign the Handbook. It would be unreasonable for the plaintiffs to regard the Associate Handbook as a binding commitment to an entitlement from Equiserve.
*625 Therefore, the court ALLOWS the defendants’ motion for summary judgment upon Count III; and DENIES the plaintiffs’ cross motion for summary judgment.
D. Dicta
A final word is appropriate about the legal merits and equitable circumstances of this lawsuit. As a matter of legal merits or demerits, the claims of Peters and Cleveland border on the specious. They knew full well of the recorded nature of their underlying phone conversation. The conversation included a plot to hector a subordinate employee into resignation. They should reasonably have understood (and perhaps did) that their employer had a legitimate business interest in the content of their phone conversation. When they received discipline, they engaged in excessive absenteeism and caused their own termination. For these accumulated self-inflicted wounds, they blamed their employer and two supervisors and put them to the wasteful trouble of a meritless lawsuit. That suit has wasted the resources of the Superior Court, as well.
RULING
For these reasons the court ALLOWS all defendants’ motions for summary judgment in their favor upon all claims; and DENIES all cross motions of the plaintiffs.
ORDER
Final judgment shall now enter in favor of all defendants and against all plaintiffs upon all claims and for the assessment of all ordinary costs against the plaintiffs.

 See Exhibits Submitted in Support of Defendants’ Motion, certified transcript of recorded call.

 Only Lapolla and defendant Lally listened to the conversations. Lapolla was the plaintiffs’ direct supervisor, and Lally was the Assistant Human Resources Director in charge of associate relations. The plaintiffs brought no claims against Morris and Marley, two other individuals who listened to the taped conversation.