VINCENT P. BIRBIGLIA *vs.* SAINT VINCENT HOSPITAL, INC.,
& others.[1]

Worcester. November 10, 1997. - March 16, 1998.

Present: WILKINS, C.J., ABRAMS, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Practice, Civil,* Judgment notwithstanding verdict. *Damages,* Loss of earning
capacity, Attorney's fees. *Unlawful Interference. Doctor,* Employment.
*Hospital,* Appointment to staff. *Contract,* Physician, Employment,
Performance and breach, Implied covenant of good faith and fair dealing.
*Eavesdropping. Charity. Corporation,* Charitable corporation.

In a civil action in which the plaintiff did not prove any economic loss as the
result of the defendants' conduct, the judge correctly entered judgments
notwithstanding the verdict in favor of the defendants on the plaintiff's
claims alleging that the defendants tortiously interfered with the plaintiff's
advantageous business relations. [83-84]

In a civil action in which the evidence did not present a jury question whether
the defendant hospital violated a covenant of good faith and fair dealing in
terminating the plaintiff physician's staff privileges, the judge correctly
granted the defendant's motion for judgment notwithstanding the verdict.
[84-86]

At a civil trial, the evidence warranted the jury's finding that the defendant
hospital violated the Massachusetts wiretap statute, G. L. c. 272, § 99 Q.
[86-88]

In an action brought against a hospital, the judge properly awarded attorney's
fees and costs to the plaintiff on his claim for violation of the wiretap
statute, G. L. c. 272, § 99 Q, and the amount was not limited by the cap
on tort recovery against a charitable institution set forth in G. L. c. 231,
§ 85K. [88]


CIVIL ACTION commenced in the Superior Court Department on
April 26, 1991.

The case was tried before *Barbara A. Lenk*, J.

The Supreme Judicial Court granted an application for direct
appellate review.

*Roy A. Bourgeois (George L. Dresser & Robert S. White* with
him) for the plaintiff.

[1]Elliott M. Marcus and Gilbert E. Levinson. There were other defendants
who are not involved in any issue argued on appeal.

*Daly D.E. Temchine*, of the District of Columbia, for Saint Vincent Hospital, Inc.

*James C. Donnelly, Jr. (Charles B. Straus, III*, with him) for Gilbert E. Levinson & another.

WILKINS, C.J. In April, 1991, the board of trustees (board) of the defendant Saint Vincent Hospital (hospital), on recommendation of the executive committee of the hospital's medical staff (ECMS), decided not to reappoint the plaintiff, Dr. Vincent P. Birbiglia, to serve on the hospital's active medical staff.

In March, 1988, the plaintiff, a neurologist who had been on the hospital's active staff since 1972, submitted an application to the ECMS for reappointment. In March, 1990, before the application was acted on, the defendant Dr. Elliott Marcus, the head of the neurology department at the hospital, submitted to the ECMS that department's recommendation that the plaintiff be denied active staff privileges and that instead he be placed on the hospital's courtesy staff. Although doctors on the active and courtesy staffs are entitled to the same medical privileges in the hospital, only doctors on the active staff may vote, hold ECMS office, and be involved in the hospital's teaching and departmental activities.

The ECMS voted, however, to recommend the denial of all privileges to the plaintiff. The plaintiff appealed from that decision, and the ECMS held a hearing at which the plaintiff testified, produced evidence, and was represented by counsel. As head of the neurology department, Dr. Marcus participated by supporting the ECMS's initial recommendation that the plaintiff be denied all privileges. After the hearing, the ECMS voted to modify its recommendation and to support the plaintiff's appointment to the courtesy, but not the active, staff.

The ECMS reported its recommendation to the board. After a hearing at which the plaintiff and his counsel made presentations, on April 2, 1991, the board recommended the plaintiff's appointment to the courtesy but not to the active staff if he agreed to adhere to certain conditions. In considering the plaintiff's application, the board looked not only at the evidence that had been before the ECMS, but also at two memoranda prepared by the defendant Dr. Gilbert E. Levinson in 1976 and 1977 when he was chief of medicine at the hospital. The memoranda detailed discussions at two meetings between the plaintiff and Dr. Levinson. In September, 1990, the plaintiff had asserted that the two memoranda were the product of illegal tape recording.

Following the board's decision, the plaintiff rejected appointment to the courtesy staff and brought this action against the hospital, Dr. Marcus, Dr. Levinson, and two other doctors alleging various wrongs committed in the denial of his reappointment. For purposes of the appeals before us, the plaintiff claimed that (1) the hospital and Dr. Marcus tortiously interfered with his advantageous business relations with physicians who referred patients to him at the hospital; (2) in denying the plaintiff's reappointment, the hospital was in breach of contract and violated an implied covenant of good faith and fair dealing; and (3) the hospital violated the Massachusetts wiretap statute (G. L. c. 272, § 99 Q) by using the memoranda prepared by Dr. Levinson.[2]

The case was tried to a jury from May 5 through June 9, 1994, generating 3,131 pages of transcript and 1,925 pages of exhibits. The jury returned a special verdict. For the purposes of these appeals, the jury found that (1) the hospital and Dr. Marcus were liable for tortious interference with advantageous relations; (2) the hospital had violated a covenant of good faith and fair dealing, thereby causing damage to the plaintiff, and the hospital was in breach of contract but caused no damages; and (3) the hospital violated the wiretap statute, and the plaintiff was entitled to $500 in compensatory damages and $50,000 in punitive damages.

The judge considered motions for the entry of judgments notwithstanding the verdicts and, as relevant to the appeals, the judge entered judgment n.o.v. for the hospital and Dr. Marcus on the claims of tortious interference with advantageous relations and for the hospital on the claim of violation of the covenant of good faith and fair dealing. The judge upheld the verdicts against the hospital for breach of contract and for violation of the wiretap law. She reduced the amount of the wiretap judgment to $20,000, pursuant to G. L. c. 231, § 85K, but awarded the plaintiff attorney's fees on that claim. The plaintiff appeals from the judgments entered against him notwithstanding the verdicts; the hospital appeals from the judgment in favor of the plaintiff on the wiretap statute violation, including the award of attorney's fees, claiming that an award of attorney's fees in addition to a damage award of $20,000 is precluded by the charitable immunity statute (G. L. c. 231, § 85K). We granted the parties' applications for direct appellate review.

[2]No issue on appeal involves the possible liability of Dr. Levinson.

1. As we have said, the judge entered judgments n.o.v. for the hospital and Dr. Marcus on the plaintiff's claim that each had knowingly and improperly interfered with the plaintiff's advantageous relations with physicians who referred patients to him. The jury had found, in their special verdict, that the plaintiff had had such advantageous relations, that the hospital and Dr. Marcus knowingly and improperly interfered with them, and that, as a result, the plaintiff's economic interest in the relations was harmed. The judge entered judgment n.o.v. for the hospital and Dr. Marcus because, in her view, the plaintiff's evidence did not permit a finding that he suffered any pecuniary loss as a result of the defendants' conduct. We agree.

The standard to be applied in determining the adequacy of the evidence, as the judge acknowledged, is the same as that applied to a motion for a directed verdict. See *Dobos* v. *Driscoll*, 404 Mass. 634, 656, cert. denied sub nom. *Kehoe* v. *Dobos*, 493 U.S. 850 (1989); *D'Annolfo* v. *Stoneham Hous. Auth.*, 375 Mass. 650, 657 (1978). The plaintiff presented an expert witness whose testimony the judge concluded did not tend to prove any economic loss, and the plaintiff does not seriously argue otherwise on appeal. He relies on documentary evidence, his tax returns for the years 1985-1992, inclusive, and records of the sources of his income.

The plaintiff points to the fact that his income from the treatment of patients (medical care income) declined from 1986 to 1992 and attributes that decline to the termination of his staff privileges. This asserted cause and effect has no support in the evidence. In June, 1989, the plaintiff closed his practice because he planned to move to Denver and notified his patients and the doctors who had given him referrals that his practice was closed. When the move fell through because of the financial instability of the institution at which he planned to work, the plaintiff reopened his practice in late November or early December, 1989, but made no formal announcement of it.

In 1990, a year during which the plaintiff had staff privileges at the hospital, his medical care income was approximately $53,797, well below his medical care income in the years before 1989. That reduction cannot possibly be attributable to the plaintiff's loss of staff privileges in May, 1991. In 1990, the plaintiff earned a substantial sum ($235,970) from forensic work, and he earned even more from forensic work in 1991 ($265,479) and 1992 ($256,545). Although the question whether

the plaintiff's forensic income should be regarded as earnings in mitigation of damages may have been for the jury (a point we do not decide), the record is barren of evidence showing that the plaintiff's decline in medical care income is attributable to his loss of staff privileges. In 1992, the plaintiff earned twice as much medical care income ($118,351), when he did not have staff privileges, than in 1990, when he did. His reliance on his earnings to prove that he suffered economic harm from his loss of staff privileges fails. See *Augat, Inc.* v. *Aegis, Inc.*, 417 Mass. 484, 490 (1994).[3]

2. The judge properly allowed the hospital's motion for a judgment n.o.v. on the plaintiff's claim that the hospital violated a covenant of good faith and fair dealing because it conducted the peer review process in bad faith and terminated his staff privileges on a pretext. We shall assume, for the purposes of this opinion, that the relationship between the plaintiff and the hospital was such that he may properly assert a claim based on the hospital's alleged bad faith, including its alleged failure to follow bylaws that prescribed the process by which a physician's staff privileges may be terminated. See *Katz* v. *Children's Hosp. Corp.*, 33 Mass. App. Ct. 574, 576 (1992) ("[w]e assume for purposes of decision . . . that the by-laws of the hospital created contractual rights in the plaintiffs"). But see *Bello* v. *South Shore Hosp.*, 384 Mass. 770, 777 (1981) ("we think it undesirable for the Massachusetts courts to review the staffing decisions of private hospitals" absent statutory discrimination). The fact is that the evidence did not present a jury question on whether the hospital violated a covenant of good faith and fair dealing in terminating the plaintiff's staff privileges.[4]

The plaintiff's claim that the delay in commencing the review

[3]We have discussed liability for the intentional tort of interference with an advantageous relation assuming, without deciding, that immunity under Federal law would not extend to Dr. Marcus and the hospital. Dr. Marcus makes no claim of immunity in his brief. The hospital does, but it offers no focused discussion as to why one who commits such a tort (see *United Truck Leasing Corp.* v. *Geltman*, 406 Mass. 811, 816-817 [1990]) would not be thereby shown to have failed to qualify for immunity. See note 4, *infra*, for a discussion of the immunity provisions of the Health Care Quality Improvement Act of 1986, 42 U.S.C. §§ 11101 et seq. (1994).

[4]We consider this issue as the plaintiff argues it. In fact, the proceedings of the ECMS and the board presented the prospect of immunity for the hospital under the Health Care Quality Improvement Act of 1986 (42 U.S.C. §§ 11101 et seq.). Section 11112(a) sets forth conditions under which immunity is available. The act states a presumption that those standards are met and puts the

hearing before the board shows the hospital acted in bad faith is unsupported by the evidence. The plaintiff was informed by a March 20, 1990, letter of the recommended denial of his reappointment and of his right to a hearing before the ECMS. The plaintiff's first request for a hearing was made in a May 3, 1990, letter. There followed a controversy over which documents the plaintiff was entitled to prior to the hearing. The initial hearing date was postponed with the plaintiff's consent, and then the hearing date was moved back further because the plaintiff commenced a court action. There was no evidence warranting a finding of bad faith in the scheduling of the hearing before the board.

The plaintiff claims that the hospital's reliance on evidence that was biased and knowingly false is evidence of its bad faith. In the portion of his brief discussing bad faith, he makes no attempt to demonstrate what evidence was biased or knowingly false. More particularly, he makes no argument pointing to specific evidence tending to prove that the ECMS or the board knew that any evidence was biased or knowingly false. The jury in fact found that both Dr. Bishop, president of the medical staff, and Dr. FitzGerald, chairman of the board and president of the hospital, acted in good faith and in the belief that they were

burden on a person, such as the plaintiff, to rebut this presumption by a preponderance of the evidence. See 42 U.S.C. § 11112(a); *Bryan* v. *James E. Holmes Regional Medical Ctr.*, 33 F.3d 1318, 1333-1334 (11th Cir. 1994), cert. denied, 514 U.S. 1019 (1995).

Our analysis of evidence of bad faith in this case is in a sense artificial because, under § 11112(a), bad faith is irrelevant to a § 11112 immunity determination. See *Mathews* v. *Lancaster Gen. Hosp.*, 87 F.3d 624, 635 (3d Cir. 1996), and cases cited ("[w]e agree with our sister circuits that § 11112[a] imposes an objective standard"); *Egan* v. *Athol Memorial Hosp.*, 971 F. Supp. 37, 42 (D. Mass. 1997), aff'd, 134 F.3d 361 (1st Cir. 1998). The objective test is whether the action was taken "in the reasonable belief that [it] was in the furtherance of quality health care" and "in the reasonable belief that the action was warranted by the facts known after [a] reasonable effort to obtain [them]." 42 U.S.C. § 11112(a)(1) & (4).

We need not consider whether the judge erred in not granting judgment n.o.v. for the hospital on the immunity claim because we agree with her on the ground on which she decided the good faith and fair dealing issue in favor of the hospital. The plaintiff had to present a jury issue on at least one of the four § 11112(a) requirements for immunity in a professional review action. It is surprising that neither brief of the plaintiff discusses the hospital's extensive argument that the judgment n.o.v. in its favor could be sustained on the alternative ground that the plaintiff failed to present sufficient evidence to rebut the Federal immunity statute's presumption of immunity.

furthering quality health care. We decline to discuss individual items of evidence on which the plaintiff might have relied before us but has not.

The plaintiff's claim that his staff privileges were not renewed because, years before, he had provided evidence against another physician in a malpractice case is baseless. He did not make this claim before either the ECMS or the board, nor did he allege it in his complaint or amended complaint. If the board did not know that he had testified against another physician, obviously it could not have relied on that fact in ruling against the plaintiff.

The hospital objects to the judge's failure to grant it a judgment n.o.v. on the plaintiff's breach of contract claim. We have assumed without deciding that there was a sufficient relationship between the plaintiff and the hospital to imply a covenant of good faith and fair dealing in that relationship. Because we have affirmed the judge's decision to grant the hospital's motion for a judgment n.o.v. on the claim of a breach of that covenant and because the jury found that the plaintiff suffered no loss as a result of the hospital's breach of contract (assuming that there was one), we see no need to pass on the breach of contract issue. The award of zero damages to a plaintiff for breach of contract is unusual, but the plaintiff has not challenged it. A proper verdict in such a case awards minimal damages. See *Nathan* v. *Tremont Storage Warehouse, Inc.*, 328 Mass. 168, 171 (1951); *King Features Syndicate, Inc.* v. *Cape Cod Broadcasting Co.*, 317 Mass. 652, 655 (1945).

3. The judge properly denied the hospital's motion for judgment n.o.v. on the count of the complaint alleging that the hospital violated the Massachusetts wiretap statute, G. L. c. 272, § 99 Q. Section 99 Q provides that "[a]ny aggrieved person whose oral or wire communications were intercepted, disclosed or used except as permitted or authorized by" § 99 has a civil cause of action against the person who intercepted, disclosed, or used such communications. An interception includes a secret recording. G. L. c. 272, § 99 B 4.

The plaintiff's claim of a violation of § 99 Q concerns the two memoranda prepared by Dr. Levinson that the board used in its evaluation of the plaintiff. As we have said, the plaintiff asserted that those memoranda were the product of secret, unauthorized recordings. The hospital argues that there was no evidence that (a) Dr. Levinson tape recorded either meeting or

(b) the board knew that the memoranda were the product of an unlawful interception when it used them.

There was evidence, hardly overpowering, that warranted the jury's finding that Dr. Levinson tape recorded each meeting. The two memoranda have the appearance of a verbatim transcription; Dr. Levinson, in arguably ambiguous language in two letters and on the memoranda themselves, referred to the documents as transcripts; and there was evidence that the senior vice-president of the hospital stated that he knew that Dr. Levinson had tape recorded a conversation with the plaintiff.

An action under § 99 Q does not require proof of a wilful use of an improperly intercepted communication. See *Pine v. Rust*, 404 Mass. 411, 413-414 (1989). The hospital's argument that the plaintiff had to prove that the hospital's board made a wilful or bad faith use of a communication known to be illegally intercepted is baseless. The *Pine* opinion is clear on that point, as the judge observed. The hospital's brief inexplicably persists in its argument without discussing or even citing the *Pine* opinion. The plaintiff had to prove, as the judge charged the jury without objection by him, that, when the board used the memoranda in deciding the issue of the plaintiff's staff privileges, the hospital knew that the memoranda were the product of unauthorized tape recordings. The hospital's knowledge was appropriately established by proof that one or more of its agents, acting within the scope of their authority, knew enough collectively to establish that the memoranda were the product of unauthorized recordings. See *Paloeian v. Day*, 299 Mass. 586, 591 (1938); *Sarna v. American Bosch Magneto Corp.*, 290 Mass. 340, 343 (1935). It was not necessary to prove that the board used the memoranda knowing them to be the product of unauthorized tape recordings.[5]

The judge did not abuse her discretion in permitting a court reporter to testify that one who is participating in a meeting has

---

[5]The hospital is correct in asserting that there is no evidence that its board knew the memoranda were the product of unlawful wiretaps when it used them in considering the removal of the plaintiff's staff privileges. The specific intent that would be required to establish that the action of the board violated any duty of good faith and fair dealing cannot be established by aggregating the knowledge of all hospital employees acting within the scope of their authority. See *United States v. LBS Bank-New York, Inc.*, 757 F. Supp. 496, 501 n.7 (E.D. Pa. 1990), and cases cited. Consequently, the violation of the wiretap statute could not provide a basis for upholding the jury verdict on the count alleging a violation of a covenant of good faith and fair dealing.

a harder time transcribing what is happening than one who is not. It is doubtful whether the jury needed such testimony on a seemingly obvious point. The hospital was not prejudiced by the evidence in any event.

4. The hospital argues that the charitable immunity statute (G. L. c. 231, § 85K) limits its liability for damages and attorney's fees to $20,000 and that the judge's award of damages of $20,000 and an additional amount for attorney's fees was error. The wiretap statute authorizes the award of a reasonable attorney's fee. G. L. c. 272, § 99 Q. The judge reduced the damages on the wiretap count to $20,000 but allowed approximately $43,500 in attorney's fees and costs, the latter of which is expressly not subject to the $20,000 limit (G. L. c. 231, § 85K).

The charitable immunity statute does not limit the recovery of attorney's fees awarded under the wiretap statute. We have recently held that, when a charitable entity has violated G. L. c. 93A, the cap of $20,000 does not limit the amount that may be recovered for attorney's fees awarded under G. L. c. 93A. See *Linkage Corp.* v. *Trustees of Boston Univ.*, 425 Mass. 1, 27-28, cert. denied, 118 S. Ct. 599 (1997). Like c. 93A, § 99 Q does not involve a tort action, and it is recovery in tort that G. L. c. 231, § 85K, caps. *Id.* at 27.[6] The plaintiff is entitled to the attorney's fees that were awarded.

5. We comment finally on the judge's observation, in denying the defendants' motions for a new trial, that the closing argument of the "plaintiff's counsel was plainly improper in a number of respects." He misstated the law after the judge had explicitly advised him not to make a specific argument. He asserted facts not supported by the evidence, urged reliance on evidence that was not admitted for probative purposes, and improperly interjected his personal opinions. He defends his actions largely by relying on the curative effect of the judge's instructions. We do not reverse the only judgment entered in favor of the plaintiff because the hospital, against which that judgment was entered, has not raised the point on appeal. A lawyer should not be free to argue improperly to a jury, relying on the judge to give a saving instruction. Even after a long trial such as the one in this case, the allowance of a new trial motion

---

[6]If the plaintiff's reply brief should be read to challenge the judge's reduction of damages to $20,000, the argument comes too late in a reply brief. See *Bassett* v. *Blanchard*, 406 Mass. 88, 90 n.1 (1989).

may be the only fair resolution of a problem that counsel wilfully or recklessly created.

*Judgments affirmed.*