## AMANOLLAH H. VAKIL *vs.* ANESTHESIOLOGY ASSOCIATES OF TAUNTON, INC., & others.[1]

No. 98-P-1610.

Bristol. November 8, 2000. - March 5, 2001.

Present: PORADA, LENK, & DUFFLY, JJ.

*Practice, Civil,* Summary judgment. *Corporation,* Close corporation, Stockholder, Purchase by corporation of its own stock. *Fiduciary. Doctor,* Employment. *Contract,* Physician, Employment, Modification, Performance and breach. *Employment,* Termination. *Hospital,* Appointment to staff. *Unlawful Interference.*

In a civil action, the majority stockholders' termination of a corporate employee and repurchase of the employee's one share of stock, all in accordance with written agreements that the employee freely entered, did not constitute a breach of fiduciary duty, where there was no evidence that the employee's compensation or employment was conditioned on his ownership of stock in the close corporation or that the majority stockholders acted out of a desire to increase their financial gain in the corporation. [118-119]

The clear and unambiguous terms of an employment contract of a shareholder in a close corporation were not modifiable by parol evidence [119-120], and where the contract was terminated with the requisite ninety-day notice and the employee's salary and benefits continued through that period, the vote of the shareholders that the employee immediately cease work did not constitute a breach of contract [120]; further, there was no basis upon which the corporation could be considered to be estopped from terminating the employee [120-121].

Where a physician's staff privileges at a medical facility were dependent upon his employment with a corporation furnishing medical services to the facility under a contract, the physician had no right to staff privileges once his employment was terminated, and where the corporation breached no duty to the physician in terminating his employment, there was no basis for a claim that the corporation improperly interfered with the physician's relationship with the medical facility. [121-122]

Where the by-laws of a medical facility provided a process for a hearing and

[1]Morton Hospital & Medical Center, Inc., Cameron Govonlu, and Kathleen Hoye.

review of the termination of physician staff privileges based solely on incompetency or misconduct, and where the facility terminated the privileges of a physician for business reasons, summary judgment was correctly entered for the facility on the plaintiff physician's claim of breach of contract for lack of such hearing and review. [122-124]

CIVIL ACTION commenced in the Superior Court Department on June 10, 1993.

The case was heard by *John J. O'Brien,* J., on motions for summary judgment, and motions for reconsideration were considered by him.

*Kenneth J. Fishman* for the plaintiff.

*Stephen S. Young* for Anesthesiology Associates of Taunton, Inc.

*Thomas W. Evans* for Morton Hospital & Medical Center, Inc.

*Thomas C. Federico,* for Cameron Govonlu, was present but did not argue.

PORADA, J. The plaintiff was a minority shareholder and employee of a close corporation, Anesthesiology Associates of Taunton, Inc. (AATI), which furnished Morton Hospital and Medical Center, Inc. (Morton), with anesthesia services for its surgical patients. When the majority shareholders of AATI, Cameron Govonlu and Kathleen Hoye, terminated the plaintiff's employment and repurchased his single share of stock in AATI, the plaintiff commenced this action against the defendants in the Superior Court. His complaint contained claims for breach of fiduciary duty against Govonlu and Hoye (count I); breach of contract against AATI (counts II and III); slander against Govonlu (count IV); tortious interference with an advantageous contractual relationship against Govonlu, Hoye, and AATI (count V); and breach of contract against Morton (count VI). All parties filed motions for summary judgment. A Superior Court judge initially allowed the defendants' motions for summary judgment for breach of contract against AATI and Morton under counts III and VI and for tortious interference with a contractual relationship under count V against AATI, Govonlu, and Hoye. The judge disallowed the plaintiff's motion. Upon a

motion for reconsideration, the judge also allowed defendants' motions for summary judgment for breach of fiduciary duty under count I against Hoye and Govonlu and for breach of contract under count II against AATI. The parties filed a stipulation of dismissal of the slander count against Govonlu (count IV). On appeal from the judgment in favor of the defendants, the plaintiff argues that summary judgment should not have been allowed on each of those counts because there were genuine issues of material fact in dispute. We affirm.

We summarize those facts that are not in dispute. The plaintiff, an anesthesiologist, began his employment with AATI in March, 1989, under an oral agreement. In January, 1990, the plaintiff signed a written employment agreement with AATI. The agreement contained the following provisions:

> "1. *Employment Period.* The Corporation hereby hires the Employee to render services from the 1st day of January, 1990, and continuing until this Agreement is terminated as hereinafter provided."

> \*\*\*

> "11. *Termination of Agreement.* Unless terminated as hereinbefore provided, this Agreement shall remain in full force and effect until terminated by the death of the Employee, or until terminated by either party upon serving proper written notice. Such notice shall be deemed served if delivered personally or mailed by certified mail, postage prepaid, and properly addressed to the respective party to whom such notice relates at the office of the Corporation. Unless otherwise agreed by the parties, the termination date specified in the notice shall be at least ninety (90) days from the date of such notice."

The plaintiff also executed a stock redemption agreement with AATI, dated January 1, 1990, which provided that, in the event of the termination of the stockholder's employment with AATI, the plaintiff was required to sell and AATI was required to buy the plaintiff's stock at a price to be established under the terms of the stock purchase agreement. The plaintiff purchased

only one share in AATI in June, 1990, for $128. He testified in his deposition that he did so solely to obtain a voice in the corporation.

As of January 1, 1990, the plaintiff began receiving the same salary that the other shareholders — Herbert Everett, John Murphy, and Govonlu — were receiving. In June, 1990, Hoye began working for AATI and in April, 1991, became a shareholder in AATI. Everett, who had founded AATI, retired from the corporation in May, 1992. In the summer and fall of 1992, the plaintiff began looking for other employment because of a deteriorating relationship with Govonlu. When Murphy died unexpectedly in December, 1992, Hoye asked the plaintiff to stay on as an employee. There were now only three shareholders and directors of AATI, the plaintiff and the individual defendants, Hoye and Govonlu.

In April, 1993, the plaintiff requested the ad hoc committee of Morton's medical staff to investigate Govonlu's abuse of his position as chief of the anesthesiology department at Morton. In May, 1993, both Hoye and Govonlu determined that they no longer could work with Vakil. On May 17, 1993, at a meeting of the board of directors at which all three shareholders were present, Hoye and Govonlu voted to terminate the plaintiff's employment ninety days from the date of the meeting and to have the plaintiff cease all work for AATI immediately. The defendants also voted to pay the plaintiff his salary during the ninety-day period and to continue his health and disability benefits during that period. The plaintiff was also paid $154 for his one share of stock based on the stock's book value at the time of his termination in accordance with the stock redemption agreement.

After the plaintiff's termination of employment with AATI, the plaintiff requested permission from Morton to exercise his staff privileges at the hospital. The president of Morton refused on the ground that Morton had adopted a policy that all anesthesia services were to be performed by a single professional group, AATI, and the plaintiff was no longer an employee of AATI. Morton also refused to grant plaintiff a hearing or appellate review regarding its decision. It also refused to conduct an investigation into charges made by Govonlu against the

plaintiff in a letter sent to the president of Morton and the Massachusetts Medical Society in May, 1993. The plaintiff claimed he was entitled under Morton's medical staff and hospital by-laws to such an investigation and hearing.

We now address each of the plaintiff's claims.

1. *Breach of fiduciary duty.* The plaintiff argues that the judge erred in allowing summary judgment for the majority stockholders, Hoye and Govonlu, because they failed to comply with the provisions of his employment contract, which the plaintiff alleges required good cause for the termination of his employment, and because their action was motivated by a desire to increase their financial benefits. Based on the record presented, we conclude that summary judgment on this count was appropriate.

Shareholders of a close corporation owe one another a fiduciary duty of utmost good faith and loyalty. *Donahue* v. *Rodd Electrotype Co. of New England, Inc.*, 367 Mass. 578, 593 (1975). "They may not act out of avarice, expediency or self-interest in derogation of their duty of loyalty to the other stockholders and to the corporation." *Ibid.* While the freezing out of a minority stockholder by the majority stockholders' termination of his employment or deprivation of corporate office may constitute a breach of fiduciary duty depending on the circumstances, it is also well established that majority stockholders must have a "large measure of discretion" in dismissing corporate officers and hiring and firing corporate employees. *Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. 842, 851 (1976). *Merola* v. *Exergen Corp.*, 423 Mass. 461, 464 (1996). Here, the plaintiff's employment agreement unambiguously provided that his employment could be terminated upon ninety days' notice. Parol evidence prior to and post execution of this agreement was not admissible to vary the express terms of the contract. See *infra*. Similarly, the stock purchase agreement provided for the repurchase of his stock upon the cessation of his employment.

Where there was no evidence that the plaintiff's compensation or employment was conditioned on his ownership of stock in the corporation or that the majority stockholders acted out of a desire to increase their financial gain in the corporation, the

majority stockholders' termination of the plaintiff's employment and repurchase of his stock in accordance with the agreements into which the plaintiff had freely entered did not constitute a breach of fiduciary duty. Cf. *Blank* v. *Chelmsford Ob/Gyn, P.C.*, 420 Mass. 404, 409 (1995) (where the plaintiff, a minority stockholder, had his employment terminated without cause and with notice in accordance with the plaintiff's employment contract by the majority stockholders and the plaintiff received all that he had bargained for, the book value of his stock and six-month notice of his termination, the plaintiff's claim for breach of fiduciary duty was properly dismissed); *Merola* v. *Exergen Corp.*, 423 Mass. at 464-465 (where there was no evidence that the minority stockholder's employment was tied to his ownership of stock in the corporation and the majority stockholder did not act in pursuit of financial gain but in accord with the minority stockholder's employment and stock purchase agreements, there was no breach of fiduciary duty).

2. *Breach of contract against AATI.* The plaintiff argues that the judge erred in allowing summary judgment on his claims for breach of contract against AATI, because there were material issues of fact pertaining to his claim that, under the terms of his employment agreement, he could only be terminated for cause and was entitled to continuing employment.[2] The plaintiff based his argument on oral conversations he had with Everett and Murphy whom he averred told him that a shareholder's employment contract could only be terminated for cause. Those conversations, however, occurred after the plaintiff signed the employment agreement.

Parol evidence is not generally admissible to vary the

---

[2]We limit our analysis to the plaintiff's claim for breach of the express contract under count II. Although the plaintiff filed a claim for breach of contract based on an implied covenant of good faith and fair dealing under count III, the plaintiff has failed to include any argument in his brief with respect to this count and, thus, we deem it waived. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). *Haran* v. *Board of Registration in Med.*, 398 Mass. 571, 581 n.7 (1986). In any event, the record is devoid of any verified material indicating that the plaintiff's termination deprived him of any past compensation or was in violation of a public policy, which would have entitled him to relief. See, e.g., *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 101 (1977); *Wright* v. *Shriners Hosp. for Crippled Children*, 412 Mass. 469, 472 (1992).

unambiguous terms of the contract. *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 753-754 (1973). However, a written agreement may be modified by a subsequent oral agreement made on sufficient consideration. *Zlotnick* v. *McNamara*, 301 Mass. 224, 225-226 (1938). See *Schinkel* v. *Maxi-Holding, Inc.*, 30 Mass. App. Ct. 41, 47 (1991). Here, there is no evidence that AATI received anything in exchange for this alleged modification of the plaintiff's employment contract by Murphy or Everett or that either one had the authority to vary the terms of the plaintiff's employment on behalf of AATI. While the plaintiff did purchase one share of stock in AATI subsequent to those conversations, he himself averred that he did so solely to obtain a voice in the corporation. Further, while parol evidence may be considered to elucidate the meaning of terms of a contract where the terms of a contract are uncertain or equivocal in meaning, *Robert Indus., Inc.* v. *Spence*, 362 Mass. at 753-754; *Vezina* v. *Mahoney & Wright Ins. Agency, Inc.*, 40 Mass. App. Ct. 218, 223 (1996), there was nothing uncertain or unclear about the termination provisions of the plaintiff's contract. Although the termination clause did not expressly state that the plaintiff's employment could be terminated without cause, it need not have done so when it clearly provided that the agreement was terminable on ninety days' notice. *Blank* v. *Chelmsford Ob/Gyn, P.C.*, 420 Mass. at 405-406, 408.

The plaintiff also asserts that AATI did not comply with the terms of its contract in that Hoye and Govonlu voted that he was to cease work for the corporation immediately. However, they also voted that the termination was effective ninety days from the date of the meeting during which period the plaintiff would receive his salary and benefits under the contract. In light of the ill will among the parties and the continuation of plaintiff's salary and benefits during the ninety-day period before its effective date of termination, we conclude their vote requiring the plaintiff to cease work for the corporation immediately did not constitute a breach of contract.

Finally, the plaintiff contends that the corporation was estopped from terminating his employment based upon representations made to him by Hoye after the death of Murphy. The plaintiff avers that Hoye asked him to stay on at the

corporation and told him she would assist him in becoming president of AATI and that, as a result, he turned down a job offer at the Berkshire Medical Center. However, there is no evidence that any precatory statements made by Hoye rose to the level of a promise in the contractual sense, see *Rhode Island Hosp. Trust Natl. Bank* v. *Varadian,* 419 Mass. 841, 850 (1995), or that she had the authority on behalf of the corporation to do so. Further, although the plaintiff averred that he turned down a job offer at the Berkshire Medical Center in reliance on Hoye's alleged promise of continuing employment, the defendants produced deposition testimony from Dr. Rene Aillon of the Berkshire Medical Center that an offer was never made to the plaintiff because the hospital "never had a chance to consider his case." Thus, the plaintiff's claim on this ground also fails.

3. *Tortious interference with an advantageous or contractual relationship against Govonlu, Hoye, and AATI.* The plaintiff claims that, under the medical staff by-laws of Morton, he was entitled to staff privileges at Morton independent of his employment with AATI which Hoye, Govonlu, and AATI wrongfully induced Morton to terminate, causing the plaintiff harm. The motion judge found that the plaintiff's staff privileges were dependent upon his employment with AATI and that, once his employment was terminated, he had no right to staff privileges. In other words, there was no contract between the plaintiff and Morton with which the named defendants could interfere. We affirm but on other grounds.

Assuming that the conferring of staff privileges upon the plaintiff constituted an advantageous relationship, if not a contractual relationship, with the plaintiff, see *Birbiglia* v. *Saint Vincent Hosp., Inc.,* 427 Mass. 80, 84 (1998), the plaintiff has failed to produce proof that the named defendants wrongfully induced Morton to terminate his staff privileges or did so as a result of improper motive or means. *G.S. Enterprises, Inc.* v. *Falmouth Marine, Inc.,* 410 Mass. 262, 272 (1991). The president of Morton averred that, once the plaintiff's professional relationship with AATI ceased, the plaintiff was not entitled to staff privileges pursuant to either the provisions of a 1989 contract between AATI and Morton or Morton's policy to have all anesthesia services performed by one group, AATI. The

plaintiff averred that the 1989 contract had expired and that AATI was not the exclusive provider of anesthesia services, so Morton could not rely on either the contract or asserted policy. The plaintiff claimed that Hoye and Govonlu had persuaded the president of Morton to revive the expired contract or to assert such a policy as a means of terminating the plaintiff's staff privileges. However, the plaintiff averred that he had no proof that this was so. Further, in light of our ruling that Hoye and Govonlu did not breach their fiduciary duty or AATI its contract with the plaintiff in terminating his employment, the plaintiff has not shown that those defendants acted improperly. *United Truck Leasing Corp.* v. *Geltman*, 406 Mass. 811, 815-817 (1990). *King* v. *Driscoll*, 418 Mass. 576, 587 (1994), *S.C.*, 424 Mass. 1 (1996). In addition, the plaintiff's allegations that the defendants were motivated by personal or financial gain or ill will would not suffice to establish that they acted improperly. *Ibid.*

4. *Breach of contract against Morton.* The plaintiff claims that the medical staff by-laws formed a contract between Morton and himself and that Morton was in breach of this contract when it terminated his staff privileges without a due process hearing as required by the by-laws. The motion judge ruled that the plaintiff's staff privileges were dependent upon his continued employment with AATI and that, once that employment had ended, his right to staff privileges automatically ceased. We agree that summary judgment was appropriate but on different grounds.

To the extent that the medical staff by-laws may have constituted a contract between the plaintiff and Morton, see *Birbiglia* v. *Saint Vincent Hosp., Inc.*, 427 Mass. at 84; *Saint Louis* v. *Baystate Med. Center, Inc.*, 30 Mass. App. Ct. 393, 403 (1991), "it is that a doctor [may] not be stripped of privileges without the process prescribed by the by-laws." *Saint Louis* v. *Baystate Med. Center, Inc.*, 30 Mass. App. Ct. at 403. The pertinent by-law in question is article VI, section 1, subsection B of the Rules and Regulations of the Medical Staff of Morton, which provided as follows:

"When any practitioner receives notice of a decision by

the Governing Body [Board of Trustees] that will affect his appointment to or status as a member of the Medical Staff or his exercise of clinical privileges, and such decision is not based on a prior adverse recommendation by the Executive Committee of the Medical Staff with respect to which he was entitled to a hearing and appellate review, he shall be entitled to a hearing by a committee appointed by the Governing Body, and if such hearing does not result in a favorable recommendation, to an appellate review by the Governing Body, before the Governing Body makes a final decision of the matter."

However, this by-law must be read in conjunction with another by-law from the same set. Article VI, section 5, subsection J provides as follows:

"The hearings provided for in these By-Laws are for the purpose of resolving, on an intra-professional basis, matters bearing on professional competency and conduct. . . ."

We are of the opinion that the hearing and appellate review contemplated by the by-laws is thus limited to termination of privileges based on incompetency or misconduct. Here, Morton has averred that the plaintiff's termination was based solely on a business decision purporting to implement its policy that AATI shall be the sole provider of anesthesia services. Because the plaintiff has failed to produce any countervailing materials demonstrating that Morton's action was prompted by a claim of incompetency or misconduct,[3] summary judgment was appropriate.

The plaintiff argues that, even if Morton based his termination on a business reason, he was still entitled to a due process hearing before termination. The plaintiff relies upon our deci-

---

[3]The plaintiff suggests that Morton terminated his privileges because of accusations made against him by Govonlu about his drinking too much and about his job performance. However, he produced no evidence to contradict Morton's averments that his staff privileges were terminated because he was no longer working for AATI. In fact, the plaintiff acknowledged that, if AATI had assigned him work after May 17, Morton would have allowed him to perform this work and that he was unaware that anyone at Morton had any problem with him.

sion in *Saint Louis* v. *Baystate Med. Center, Inc.*, 30 Mass. App. Ct. at 403 & n.8, in support of this premise. However, in dicta, we stated that the plaintiffs, who lost their staff privileges at the defendant hospital in accordance with the hospital by-laws, had no claim for breach of contract. In that case, the plaintiffs had received the gamut of hearings provided in the hospital by-laws. *Ibid*. Here, where the plaintiff has not shown that Morton's termination of his staff privileges was a result of any alleged misconduct or incompetency on his part, he was not entitled to a hearing and appellate review under Morton's medical staff by-laws and, thus, had no claim for breach of contract against Morton.[4] See *Mateo-Woodburn* v. *Fresno Community Hosp. & Med. Center*, 221 Cal. App. 3d 1169, 1185-1188 (1990) (hearing not required for anesthesiologists who were barred from practicing when hospital switched from staffing its department with independent anesthesiologists to those employed by a single professional group where decision was not based on any unethical or unprofessional conduct or incompetency); *Dutta* v. *Saint Francis Regional Med. Center, Inc.*, 254 Kan. 690, 696-697 (1994) (where hospital by-laws provided for a due process hearing for the purpose of resolving professional competency and conduct matters, radiologist was not entitled to a hearing where revocation of access to radiology facilities was based on business considerations); *Anne Arundel Gen. Hosp., Inc.* v. *O'Brien*, 49 Md. App. 362, 371-374 (1981) (due process hearing not required absent allegations that radiologists were incompetent; instead loss of radiologists' privileges was due to the expiration and nonrenewal of an exclusive contract for radiology services).

*Judgment affirmed.*

[4]The plaintiff also asserts that, before his staff privileges could be terminated, he was entitled to have the charges made against him by Govonlu in the May letter to Morton's president investigated and to have a hearing before the executive committee of the medical staff under Morton's hospital by-laws. The motion judge refused to consider this argument because the plaintiff failed to allege a breach of the hospital by-laws as a cause of action in his complaint. Assuming without deciding whether the issue is properly before this court, the plaintiff's argument fails because there was no evidence that the plaintiff's staff privileges were terminated because of those charges.