NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13857

MAHABUB KHODA  vs.  BANGLADESH ASSOCIATION OF NEW ENGLAND, INC.,
& others.[1]


Essex.     February 2, 2026. - June 3, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
Dewar, & Wolohojian, JJ.


Practice, Civil, Attorney's fees, Costs, Contempt.  Contempt.
    Corporation, Charitable corporation, Non-profit
    corporation.



Civil action commenced in the Superior Court Department on
October 30, 2023.

A complaint for contempt was heard by Kristen Buxton, J.,
and a motion for attorney's fees and costs was heard by Janice
W. Howe, J.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Julie Pruitt Barry (Nicole Joyce Cocozza also present) for
the defendants.
Stephanie R. Parker for the plaintiff.


_____

[1] Pervin Chowdhury, Shalauddin Khan, and Tanvir Murad.

DEWAR, J. The defendants in this case are a charitable organization and three individuals who are unpaid volunteers of the organization. They contend that the $20,000 cap on tort liability against charitable organizations set forth in G. L. c. 231, § 85K, limits an award of attorney's fees and costs levied against them in a civil contempt proceeding. The Superior Court judge correctly concluded that the plaintiff's contempt action was not a "cause of action based on tort," G. L. c. 231, § 85K, and that the cap therefore did not apply. Because the defendants have not shown that the judge otherwise abused her discretion in awarding the attorney's fees and costs requested by the plaintiff, we affirm the judgment.

Background. The Bangladesh Association of New England, Inc. (BANE), is a nonprofit organization incorporated in Massachusetts. The plaintiff, Mahabub Khoda, is a member of BANE. He filed to run as a candidate for the presidency of BANE in 2023. Voting was scheduled to take place over two days, November 10 and 11, 2023, in the city of Cambridge. Prior to that vote, on October 30, 2023, Khoda commenced an action in the Superior Court against BANE and the individual defendants, alleging that they planned to conduct the election in a manner that violated the organization's bylaws. Khoda also moved for preliminary injunctive relief, which the defendants opposed. After a hearing, on November 7, 2023, a Superior Court judge

(motion judge) allowed the motion for a preliminary injunction and enjoined the use of absentee and mail-in balloting procedures that, the judge found, would violate the organization's bylaws requiring that ballots be executed in person and immediately delivered to the election commissioner for safe keeping.

Following the election, Khoda filed a complaint for contempt against the defendants, claiming that they had failed to comply with the preliminary injunction in conducting the election. After a hearing, the motion judge ordered the defendants to file an answer to the contempt complaint and permitted the parties to conduct discovery. A bench trial was held on the contempt complaint over three days in April and May 2024 before a different judge (trial judge).

Following closing arguments, the trial judge stated in a preliminary order of decision that Khoda had met his burden of proving contempt and requested further briefing from the parties on the remedies to be ordered. Following submission of the posttrial briefs, the judge issued a written decision on July 12, 2024 (contempt order), in which she found, by clear and convincing evidence, that the defendants violated the preliminary injunction and that this violation had caused the

election's results to be "egregiously unreliable."[2]  The judge ordered that the election results be set aside and that BANE hold a new election within ninety days.  The contempt order also stated that the court would award attorney's fees and costs to compensate Khoda for expenses caused by the defendants' contempt and invited Khoda to file a motion for such fees and costs.

The defendants sought relief from the contempt order by filing a petition with a single justice of the Appeals Court under G. L. c. 231, § 118, first par.  They also sought stays of the contempt order from both the trial judge and the single justice.  These requests for relief were denied.[3]  The parties thereafter settled the underlying election dispute but did not reach an agreement as to the award of fees and costs.[4]

Khoda filed an application seeking $129,282.95 in attorney's fees and $5,283.48 in costs.  In support, he

---

[2] The judge found, among other facts, that hundreds of ballots were added to the vote count by BANE's election commission despite not having been cast and counted pursuant to the prescribed procedures; that BANE's witnesses could not account for the source of these ballots; and that, in the absence of the challenged ballots, Khoda would have won the election by an "overwhelming majority."

[3] In denying interlocutory relief under G. L. c. 231, § 118, first par., the single justice noted that nothing in his order affected the defendants' ability to file a notice of appeal from a judgment of contempt once entered.

[4] As part of the settlement agreement, Khoda became president of BANE in January 2025 for a full two-year term.

submitted affidavits from his counsel, copies of fee invoices, and an affidavit from an unaffiliated attorney opining that the rates charged and number of hours worked were reasonable. The defendants opposed the application, arguing that the amount of the requested award violated the charitable immunity statute, G. L. c. 231, § 85K -- which, the defendants contended, capped the award at $20,000 -- and also that the amount of attorney's fees requested was unreasonable on various other grounds.

After a hearing before the motion judge who had ordered the preliminary injunction but who was not the trial judge, the motion judge allowed Khoda's requested amount of fees and costs, totaling $134,566.43, in an order dated November 27, 2024 (fee order). The judge rejected the defendants' argument that the cap on damages under the charitable immunity statute applied to the attorney's fee award. The judge also concluded that the amount of the fee request was reasonable in light of the nature and complexity of the matter; the amount of time expended by counsel on the tasks entailed, which the judge found to be reasonable; and the hourly rates charged, which the judge also found to be reasonable. Following entry of judgment, the defendants timely appealed. We transferred the appeal to this court on our own motion.

Discussion. We review a judge's award of attorney's fees and costs for abuse of discretion. See Hidalgo v. Watch City

Constr. Corp., 497 Mass. 319, 322 (2026).  See also Passatempo v. McMenimen, 461 Mass. 279, 304 (2012), quoting Police Comm'r of Boston v. Gows, 429 Mass. 14, 17 (1999) ("Where a party's conduct in a litigation constitutes contempt of court, . . . a court has discretion to award attorney's fees against the contumacious party").  We will disturb an award only if we determine that it "resulted from a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives."  Hidalgo, supra, quoting Sutton v. Jordan's Furniture, Inc., 493 Mass. 728, 742 (2024).

Here, the defendants argue that the motion judge erred in concluding that the award of attorney's fees and costs was not subject to the $20,000 cap set forth in the charitable immunity statute, G. L. c. 231, § 85K.  They further argue that, even if that cap is not applicable here, the motion judge abused her discretion in concluding that the requested fee award was reasonable.  We address each argument in turn.

1.  Charitable cap.  Enacted by the Legislature in 1971, G. L. c. 231, § 85K, abolished the common-law defense of charitable immunity to "any cause of action based on tort." Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 390-391, cert. denied sub nom. Globe Newspaper Co. v. Ayash, 546 U.S. 927 (2005), quoting G. L. c. 231, § 85K.  The statute also, however,

"imposed a mandatory $20,000 limit on liability 'if the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation.'"  Ayash, supra at 391, quoting G. L. c. 231, § 85K.  The purpose of this liability cap is "to protect the funds [and other assets] of charitable institutions so they may be devoted to charitable purposes."  Ayash, supra, quoting English v. New England Med. Ctr., Inc., 405 Mass. 423, 429 (1989), cert. denied, 493 U.S. 1056 (1990).[5]

Because the $20,000 limit on liability applies only to a "cause of action based on tort," G. L. c. 231, § 85K, the cap "does not apply . . . unless there is a 'tort' within the meaning of the statute," Ayash, 443 Mass. at 391.  See, e.g., id. at 390-391 (retaliation claim under G. L. c. 151B not "action based on tort"); Birbiglia v. Saint Vincent Hosp., Inc., 427 Mass. 80, 88 (1998) (same for claim under wiretap statute, G. L. c. 272, § 99 Q); Linkage Corp. v. Trustees of Boston

---

[5] As relevant here, G. L. c. 231, § 85K, provides:

"It shall not constitute a defense to any cause of action based on tort brought against a corporation, trustees of a trust, or members of an association that said corporation, trust, or association is or at the time the cause of action arose was a charity; provided, that if the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation, trust, or association, liability in any such cause of action shall not exceed the sum of twenty thousand dollars exclusive of interest and costs . . . ."

Univ., 425 Mass. 1, 27, cert. denied, 522 U.S. 1015 (1997) (same for claim under G. L. c. 93A). The relevant inquiry is whether the damages "flow from a tort 'committed in the course of any activity carried on to accomplish directly [a defendant's] charitable purposes.'" Ayash, supra, quoting G. L. c. 231, § 85K.

Pointing to the remedial nature of civil contempt proceedings to compensate the plaintiff for wrongful conduct, the defendants contend that Khoda's contempt claim was a "cause of action based on tort" within the meaning of the charitable immunity statute. "Where, as here, the statutory language is not defined, we ordinarily give the words their usual and accepted meanings, which we derive from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions" (quotation and citation omitted). Peebles v. JRK Prop. Holdings, Inc., 496 Mass. 389, 394 (2025).

"While there is probably no universally accepted definition of the concept of torts," Ankiewicz v. Kinder, 408 Mass. 792, 795 (1990), the defendants' argument is irreconcilable with a basic feature of a tort action: the breach of a common-law duty owed to another person. See id. ("All torts share the elements of duty, breach of that duty, and damages arising from that breach"); Restatement (Second) of Torts § 4 (1965) ("'duty'

. . . denote[s] the fact that the actor is required to conduct himself in a particular manner at the risk that if he does not do so he becomes subject to liability to another to whom the duty is owed").  By contrast, an action for civil contempt seeks to redress damages caused by the "disobedience of a clear and unequivocal command" in a court order -- here, the obligation to conduct the disputed election in the particular manner ordered by the Superior Court (citation omitted).  Birchall, petitioner, 454 Mass. 837, 852 (2009).  See Koshy v. Sachdev, 477 Mass. 759, 773 (2017) (contempt action "is intended to achieve compliance with the court's orders for the benefit of the complainant" [quotation and citation omitted]).  Khoda's contempt action thus was an action to redress the violation of a court order rather than the breach of any duty imposed under the common law of tort.[6]

---

[6] The defendants suggest in passing that Khoda's action sounded in negligence, asserting -- without citation to the record -- that BANE's conduct was merely a "negligent failure to comply with the trial court's injunction" (emphasis in original).  It remains the case, however, that Khoda's contempt action was based on the violation of the terms of the preliminary injunction as to how BANE's election was to be conducted, not on the breach of a duty of reasonable care.  Cf. Hill-Junious v. UTP Realty, LLC, 492 Mass. 667, 672-673 (2023) (elements of negligence claim).  Moreover, the defendants have not appealed from the contempt order, in which the trial judge concluded that Khoda had proven "clear and undoubted disobedience" of the preliminary injunction.  See Birchall, petitioner, 454 Mass. at 852-853.

We are not persuaded to conclude otherwise by the sole case cited by the defendants. In Parker v. United States, 153 F.2d 66, 71 (1st Cir. 1946), the court considered whether liability for a civil contempt fine levied against a debtor was dischargeable in bankruptcy. Concluding that the balance owed on the fine must be discharged because it was a "debt" within the meaning of the Bankruptcy Act, the court reasoned in part that a compensatory fine in a civil contempt proceeding was "somewhat analogous to a tort judgment" because the fine was remedial in nature and owed to the person wronged. Id. at 70-71. In drawing this analogy for the distinct purpose of deciding whether the fine was a "debt," the court did not opine that a civil contempt action actually is an action in tort. See id. And, for the reasons we have stated, the plaintiff's contempt action, while remedial in nature, was not a "cause of action based on tort" under G. L. c. 231, § 85K.

For at least this reason, the motion judge did not err in concluding that the charitable immunity statute did not cap the award of attorney's fees.[7]

_____

[7] The motion judge also concluded that the charitable cap was inapplicable for the further reason that the cap does not apply to an award of attorney's fees. Cf. Birbiglia, 427 Mass. at 88 (noting that costs are "expressly not subject to the $20,000 limit"); G. L. c. 231, § 85K ("liability . . . shall not exceed the sum of twenty thousand dollars exclusive of interest and costs"). The defendants' brief does not address this issue, and, deciding the case as we do, we need not reach it. Nor need

2. Fee award. The defendants argue in the alternative that, if the charitable cap is not applicable, the motion judge nonetheless abused her discretion by allowing Khoda's fee request in its entirety. We discern no such abuse of discretion.

Determination of the amount of reasonable attorney's fees should "begin with the lodestar calculation," which is "based on the number of hours that are reasonably expended and adequately documented, multiplied by a reasonable hourly rate." LaChance v. Commissioner of Correction, 475 Mass. 757, 772 (2016). This calculation is "the basic measure of a reasonable attorney's fee" and "should govern unless there are special reasons to depart from [it]" (quotations omitted). Hidalgo, 497 Mass. at 324.

> "In identifying the reasonable hours and rates to be used in a lodestar calculation, the court 'should consider the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.'"

Id. at 323, quoting Linthicum v. Archambault, 379 Mass. 381, 388-389 (1979). "No one factor is determinative, and a factor-

---

we reach the plaintiff's argument that the cap could protect only BANE from liability and not the individual defendants. Cf. Morrison v. Lennett, 415 Mass. 857, 864 (1993) (employees of charitable organizations "not entitled to the benefit of the limitation on damages contained in § 85K").

by-factor analysis, although helpful, is not required." Berman v. Linnane, 434 Mass. 301, 303 (2001). "Judges are afforded considerable discretion in weighing the[] . . . Linthicum factors, as they are 'in the best position to determine how much time was reasonably spent on a case, and the fair value of the attorney's services.'" Hidalgo, supra, quoting Fontaine v. Ebtec Corp., 415 Mass. 309, 324 (1993).[8]

Here, the defendants argue that the judge abused her discretion in basing the award entirely on the rates charged and "excessive" and "duplicative" hours expended, without sufficient consideration of the factors under Linthicum, 379 Mass. at 388-389. The defendants argue that the judge additionally should have considered, as part of the nature of the case, the defendants' statuses as a nonprofit organization and unpaid volunteers; their purported inability to pay the cost of the award; and the fact that, in the defendants' view, Khoda already had obtained "complete relief" by way of the parties' settlement.

To begin, the defendants, who have not challenged the hourly rates charged by Khoda's counsel, have not shown that the

---

[8] Although the motion judge did not preside over the trial on the claim for civil contempt, she issued the underlying preliminary injunction, held a hearing on the contempt complaint, ordered the defendants to file an answer to it, and authorized discovery in advance of trial.

judge abused her discretion in concluding that the hours expended were reasonable.  Rejecting the defendants' argument that Khoda's attorneys performed duplicative work, the judge instead found the total hours and costs of prosecuting the contempt complaint to be reasonable, citing, among other considerations, the expedited discovery schedule, three-day trial with ten witnesses, and interlocutory appeal; the time allotted to the billed-for tasks in the invoices; and the results the attorneys obtained.  See Linthicum, 379 Mass. at 388-389 ("time and labor required" and "result obtained" should be considered).  While the defendants argue that Khoda's two attorneys "often billed for the same tasks" and "overstaff[ed]" the case, the defendants do not identify time entries reflecting unreasonable duplication of effort.  Cf. Haddad v. Wal-Mart Stores, Inc. (No. 2), 455 Mass. 1024, 1027 (2010).  For example, they object in particular to the time billed for internal communications among Khoda's legal team, but the disputed time amounted to just eight hours over the nine-month span from the drafting of the contempt complaint to the submission of the fee request.  Cf. id. (fee award reduced where approximately forty percent of two attorneys' time spent on communications with other attorneys).  Moreover, Khoda submitted an independent attorney's affidavit attesting that Khoda's two attorneys "neither over-staffed nor over-conferenced" and "made efficient

use of [their] resources and delegated work to [a] paralegal where appropriate."  On this record, we cannot say the judge abused her discretion in declining to reduce the fee award for overstaffing or redundant efforts.

Nor did the motion judge abuse her discretion in declining to reduce the award on the other three grounds urged by the defendants.  First, with respect to the defendants' statuses as a nonprofit organization and unpaid volunteers, the judge addressed the defendants' principal argument under the charitable immunity statute and, as we conclude today, correctly determined that the $20,000 cap did not apply in this action. In support of their further argument that, even if the statutory cap did not apply, the judge should have reduced the award because BANE was a nonprofit organization and the individual defendants unpaid volunteers, the defendants cite, as they did below, authority establishing that a fee award must be reasonable and take into account the nature of the case.  See Linthicum, 379 Mass. at 388-389.  Consistent with this authority, in determining that the requested fee award was reasonable, the judge considered the Linthicum factors, including that this action was in the nature of contempt.  See Gows, 429 Mass. at 19 (fee award justified in contempt cases to remedy "the gratuitous burden placed on the successful party who is forced to incur further legal expenses simply to obtain what

a court has previously awarded or to enforce a right that a court has previously declared" [quotation and citation omitted]). In these circumstances, the judge's decision to award the full fee requested did not "fall[] outside the range of reasonable alternatives." Hidalgo, 497 Mass. at 322, quoting Sutton, 493 Mass. at 742.[10]

Second, with respect to the defendants' argument that the judge was required to consider their inability to "shoulder the costs" of the fee award, the record does not support a conclusion that the motion judge abused her discretion on this

---

[10] The defendants have waived their further argument that the motion judge was required to consider, before awarding attorney's fees against the individual defendants, whether they could be liable for contempt as unpaid volunteers of a nonprofit organization. See G. L. c. 231, § 85W ("no person who serves without compensation . . . as an officer, director or trustee of any nonprofit charitable organization . . . shall be liable for any civil damages as a result of any acts or omissions relating . . . to the performance of his duties"); 42 U.S.C. § 14503(a) (Federal analogue). The defendants did not press any such argument before the motion judge, following the parties' settlement of all but the fee motion. The defendants' sole mention of these statutes was in passing as part of their broader argument that Khoda's counsel expended an unreasonable amount of time on this contempt matter in light of BANE's status as a charitable organization and the individuals' status as unpaid volunteers; the defendants argued that the amount of fees requested was unreasonable in part because Khoda "has been aware from the outset that the [v]olunteer [o]fficers claim statutory immunity under state and federal laws, [G. L. c. 231, § 85W]; 42 U.S.C. § 14503(a), and that as unpaid volunteers of a not-for-profit organization that they would also not be in a position to pay excessive fees for this 'breach of contract' case" (emphasis added). The defendants thus waived any such claim of immunity. See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006).

ground.  The defendants' brief does not cite to any record evidence for the proposition that they are, in fact, unable to pay the award, and no such finding is compelled by the record before this court.[11]

Finally, the motion judge did not abuse her discretion in rejecting the defendants' argument that the requested fee award was unreasonable because Khoda had obtained "complete relief" via the parties' settlement of the underlying election dispute. This argument is incorrect as a factual matter.  Although Khoda eventually by settlement was named president of BANE for the two-year term he sought in the disputed election, the settlement did not resolve the parties' dispute over the amount of attorney's fees to be awarded to Khoda.  Moreover, the parties' settlement occurred only after Khoda filed his contempt complaint for the failure to follow the election procedures set forth in the preliminary injunction; conducted discovery; tried the case over three days; filed posttrial briefing requested by the trial judge; and responded to the defendants' stay motions and interlocutory appeal.  The judge therefore acted within her

---

[11] The record does contain affidavits from each of the three individual defendants submitted with their opposition to the fee request, but none avers that the individual defendant would not be able to pay the requested amount if awarded.  And, while one defendant's affidavit states that such a fee award would likely force BANE into bankruptcy, another defendant reports that BANE, during a recent two-year period, raised $100,000, an amount approaching that of the fee award.

discretion in awarding attorney's fees to Khoda for work caused by the defendants' contempt.  See Passatempo, 461 Mass. at 304.

Conclusion.  For the foregoing reasons, we affirm the November 27, 2024, order granting Khoda's application for attorney's fees and costs and the judgment of March 26, 2025.[12]

So ordered.

---

[12] We decline Khoda's request that we award appellate attorney's fees and costs for a frivolous appeal under G. L. c. 231, § 6F; G. L. c. 211A, § 15; and Mass. R. A. P. 25, as appearing in 481 Mass. 1654 (2019).